6977

HALL v. JAMES T. LATIMER & SON.

CHATTEL MORTGAGE—ASSIGMENT OF—GUARANTY.—The holder of a chattel mortgage transferring it "without recourse" for value, thereby guarantees the genuineness of the paper.

Before GARY, J., Abbeville, October term, 1907. Affirmed.

Action by W. C. Hall against James T. Latimer & Son. From judgment for plaintiff, defendant appeals on the following exceptions:

I. "Because his Honor erred in charging the jury as follows: 'Now I tell you what the assignment of it does guarantee; they warrant by the assignment that they are the owners of it and that it is a genuine paper, not fictitious. If it turns out they have sold him a fictitious paper and got his money, they have got his money without any consideration, got his money without giving him anything in return for it, if it is fictitious.' Said charge being erroneous under the facts in this case, the assignment having expressly stated that it was 'without recourse,' and the defendants not having been the original payees in said paper, guaranteed nothing by their assignment.

II. "Because his Honor erred in comparing the case at bar with the following illustration: 'Suppose the clerk of court should give me a check on the Bank of Newberry, sign Mr. Aull's name to it, and I should go to that store or to one of you gentlemen and discount it for fifty per cent. on the dollar, a check drawn for one hundred dollars, and I should sell it to you for fifty dollars, and I put on the back of it, "I hereby transfer and assign this check to either one of the jurors, for value received, without recourse on me;" that recourse would mean that I do not guarantee the payment of it.' The error consisting in this: That, under these circumstances, the check being given to the party presenting it, he would be the payee of the check, and, therefore, not in the position the defendants were in the case at bar, said illustration being calculated to mislead the jury.

III. "Because his Honor erred in charging the jury as follows: 'So that is a question of fact I put before this jury—if it is a fictitious mortgage, then the plaintiff has not bought that which it purports to be; if it is a genuine mortgage, then he has got that which he bought, it makes no difference whether it is paid or not. Wherever the indorser puts on it "without recourse," you do not indorse payment;

you cannot sell a worthless note, so far as collecting it is concerned, but it must be a genuine note.   If you sell a forged note, you sell nothing; you give title to nothing; you give a worthless piece of paper, and the law will not sanction a transaction of that sort.'   The error being that the defendants not being payees in said note and mortgage, but those holding it as collateral security, and having indorsed it to the plaintiff 'without recourse' on them, did not guarantee the original signature to be genuine, but only transferred what title they had to the paper, and it was error, therefore, that they guaranteed the signature of the maker.

IV. "Because his Honor erred in charging the jury, upon the request of the plaintiff, as follows: 'First. That when one party assigns or transfers a paper purporting to be a genuine instrument, that the transferer impliedly warrants that the paper is what it purports to be and that the party who made it is real, and this warranty is not affected by the fact that the paper is assigned 'without recourse,' nor by the fact that the party who transferred the paper did not know that the paper was not genuine.   The transferer is still liable, unless it appears at the time of the transfer that he expressly told the purchaser that he would not warrant the paper to be genuine.'   The error in said charge being that the paper in this case being held by the defendants simply as collateral security, with the knowledge of the plaintiff, the transfer by them 'without recourse' did not guarantee the genuineness of said paper, and his Honor erred in charging otherwise.

V. "Because his Honor erred in charging the jury the second request of the plaintiff to charge, as follows: 'Second. That even if Hall did purchase an account to which the note and mortgage in this case was collateral, the Latimers would still guarantee the genuineness of the note and mortgage, as stated above, and they would be liable in this case for the amount which Hall paid them for the paper, if the jury in this case believe Hall purchased said account relying upon the warranty, expressed or implied, that the note and mort-

gage were genuine, if he has been damaged because the paper was not genuine.' The error being that if the real consideration was the purchase of an account, then the plaintiff got what he purchased, and the mere fact that some of the collateral turned out to be worthless would not affect the validity of the instrument, or render the purchase of the account without consideration.

VI. "Because his Honor erred in charging the third request of the plaintiff, which was as follows: 'Third. That the words "without recourse" in an assignment means that the party does not guarantee that the maker will pay a paper, but, notwithstanding these words, he still guarantees that the paper is genuine, unless the agreement between the parties was that he would not warrant their genuineness; and this is so, even though the parties who made the transfer believed the papers were genuine and had no suspicion that they were fictitious.' The error being that a non-negotiable paper, transferred by a party who is not the original holder by simply assigning it, 'without recourse,' does not warrant the genuineness of the paper; and if he believed the paper was genuine, and had no suspicion that it was a forgery, he could not be charged with guaranteeing the genuineness of a paper.

VII. "Because his Honor erred in refusing to charge the first request of the defendants, which was as follows: 'First. That a transferer of non-negotiable paper does not assume any liability by transferring such paper "without recourse." ' And in making the following comment to the jury: 'That I cannot charge you, for the reason that he does guarantee that the paper is genuine. You sell a man a paper purporting to be a mortgage and it turns out that it is not a mortgage, the man who sold it to him guarantees it is a mortgage and will be liable for the failure of consideration.' It being respectfully submitted that said request embodied a sound proposition of law, and his Honor erred in holding that the transferring of a non-negotiable paper by a party not the payee guarantees that the paper is genuine.

VIII. "Because his Honor erred in refusing to charge the defendant's second request to charge, which was as follows: 'Second. That the sale of the note and mortgage in this case, if the jury find that there was a sale, only warrants on the part of James T. Latimer & Son that the signature of Dan Mitchell was genuine, and did not warrant the signature of any other party to said paper.' Said request containing a sound proposition of law and being applicable to the facts in this case, and not being applicable to the facts in the case of *Strange* v. *Ellison,* 2 Bailey, 365, under the authority of which case the presiding Judge refused to charge said request.

IX. "Because his Honor erred in refusing to charge the third request of the defendant, which was as follows: 'Third. That if the jury find from the testimony that the plaintiff doubted the validity of said paper, then it was his duty to have pursued the inquiry; and if by inquiry he could have found out that said paper was not genuine, and negligently failed to inquire, then he is chargeable with whatever he would or might have found out, and could not recover in this action.' Said request embodied a sound proposition of law, and the plaintiff having testified that he doubted the validity of said paper, and the defendants having testified that they had no doubt of the genuineness of the paper, it is submitted that if the plaintiff lost by the purchase of said paper, he was estopped to call upon the defendants to make his loss good.

X. "Because his Honor erred in refusing to charge the defendants' fourth request to charge, which was as follows: 'Fourth. That if the jury find from the testimony that the defendants told the plaintiff before he purchased the paper that they did not know whether it was good or not, and, nevertheless, the plaintiff purchased the paper, relying upon his own judgment, then he could not recover.' Said request embodying a sound proposition of law, for the reason that if the plaintiff purchased the paper, relying upon his own judgment, then he could not rely upon and employ the war-

ranty of the defendants, and, under these circumstances, would not be entitled to recover.

XI. "Because his Honor erred in refusing to charge the jury the fifth request of the defendants, which was as follows: 'Fifth. That if the jury find from the testimony that the real consideration was for the account which the defendants held against Dan Mitchell, and that the note and mortgage were merely transferred as collateral to secure said account, then the plaintiff could not recover, and the jury must find for the defendants.' And in refusing said request for the reason stated by him, which is as follows: 'That I refuse to give you for the reason that if he transferred the account, and with that account transferred a mortgage, and that mortgage purported to be a genuine mortgage, as collateral security, the party would warrant the mortgage was genuine, and if it turned out to be fraudulent, or forgery, he could not retain the money under these circumstances.' It being respectfully submitted that if the real consideration paid by the plaintiff to the defendants was for the account, then the mere fact that one of the papers transferred as collateral security to the account turned out to be worthless would not entitle the plaintiff in this action to recover."

*Mr. William N. Graydon,* for appellant, cites: *Did the defendants become guarantors of the mortgage by the assignment?* 7 Cyc., 809; 74 S. C., 180; 65 Am. St. R., 752. *Plaintiff had enough to put him on inquiry at time of purchase that paper was not genuine:* 7 Cyc., 943, 954; 49 S. C., 454; 52 S. C., 224.

*Mr. William P. Green,* contra, cites: *Party transferring a note impliedly warrants it is what it purports to be:* 2 Bail., 365; 74 S. C., 184; 15 Ency., 1240; 4 Ency., 476; 163 U. S., 385; 87 Am. D., 382. *Assignment "without recourse" does not affect this doctrine:* 4 Ency., 276; 87 Am. Dec., 382.

July 25, 1908. The opinion of the Court was delivered by

Mr. CHIEF JUSTICE POPE. The plaintiff contends that on the 16th day of October, 1906, he contracted with one Dan Mitchell for his labor on his plantation in working on shares of crop for the year 1907, and that one of the defendants, Ernest L. Latimer, reduced the contract of service between the plaintiff and said Dan Mitchell to writing; that on the 29th day of October, 1906, after repeated efforts had been made by defendants to sell an account to the plaintiff, the plaintiff purchased the account of Dan Mitchell from the firm of Latimer & Son for the year of 1906, together with the note and mortgage accepted as collateral thereto by said defendants from the said Dan Mitchell; the said collateral consisting of a bond payable eight months after date. and dated April 12, 1906, executed by Ben Cobb and O. J. McDade, also at the same time and a part of the same transaction, a mortgage of personal property was executed by Ben Cobb and O. J. McDade unto Dan Mitchell, which is duly attested and recorded in volume 54, in office of R. M. C. for Abbeville county.

The plaintiff contends that the defendants assured him that the collateral was *bona fide* and for all of the account, and the collateral thereto; he paid the defendants the sum of $130. The account called for $134.32.

The defendants in their answer set up that they sold the account in question for the amount of the sum set up in the complaint, and that they assigned the collateral in writing, especially stating that the same was done "without recourse" upon them.

The point of contention between plaintiff and defendants is first, as to the sale of the account and the collateral mentioned; the plaintiff contends that it was a single transaction, while the defendants contend that they sold the account and transferred the collateral to the plaintiff merely to complete a transaction.

The cause came on to be heard before Judge Ernest Gary and a jury; both sides to the controversy introduced testimony in support of their respective contentions. After the testimony was closed each side made requests to charge, and after the charge of the Judge the jury found a verdict for the plaintiff for the whole amount sued for, to wit, $130. The defendants then appealed.

Let the grounds of appeal be reported.

The first eight exceptions will be considered together:

The Circuit Judge held, in effect, that when one assigns a chose in action, even if he uses the words *without recourse* to the assignors, that while such assignment must be taken by the assignee with the recognition that the assignors are not responsible to make up the value of the thing assigned, but yet they are responsible for the *bona fides* of the transaction. In other words, that the assignors are responsible for the genuineness of the chose assigned.

Now, the Judge in his charge held that while an assignor assigned the chose "without recourse," that yet they were responsible to the assignee for *the bona fides* of the transaction, that the assignment must be made *bona fide,* not in fraud, that the defendants must assign a genuine paper and not a fictitious paper. Now, care must be taken to remember distinctly that the defendants, having hedged about their assignment with the words "without recourse," are protected against any claim by the plaintiff to respond in value for the thing assigned; that the liability of the defendants arises purely from having assigned something which never, in fact, existed, but was a paper which was not genuine.

That is not a new question to this Court, but has been considered in the case of *Strange* v. *Ellison,* 2 Bailey's Law, 385. The Court, in that case, held: "Every one who vends an article impliedly undertakes that it is what its appearance indicates, and that it is not disguised so as to make it what it is not. The principle applies to all sorts of commodities in whatever form they may exist. Promissory notes are a common article of traffic, and their value is measured by the

responsibility of the drawer and the indorser. The usual manner of indorsing is by the superscription of the indorser's name, which constitutes the evidence of his liability. Finding a name so indorsed, one would necessarily conclude that it was placed there for that purpose; and it would as necessarily be looked to as a part of the securty of the debt. If it happens there by fraud or by mistake, and the purchaser takes it ignorant of that fact, he is as much injured and deceived as if he had been imposed upon by counterfeit money; and the liability of the seller is the same."

In the case at bar, the integrity of the note and mortgage were submitted to the jury as a question of fact for their solution, both parties to the controversy directed their testimoney to that issue, the charge of his Honor laid down the law in regard to it, and the verdict of the jury unmistakably held that the note and mortgage in question was a counterfeit, and that the defendants had received $130 of the plaintiff's money for said chose. The case of *Ford* v. *Bank,* 74 S. C., 184, 54 S. E., 204, 10 L. R. A. (N. S.), 63, n., aptly lays down the rules of law applying to the conduct of any individual or individuals, whether innocently or advisedly receiving one's money when fraud or misrepresentation are concerned. We might also refer to 13 Enc., 1240, where it is stated as follows: "It is a general rule that one making a sale or transfer of a *chose in action* warrants its genuineness, and this is so whether he warrants it in terms or is silent at the time when the sale or transfer is made." 4 A. & E. Law, 476; *Meyer* v. *Richards,* 163 U. S., 385. In *Watson* v. *Cheshire,* 87 Am. Decisions, 352, it is held: "That a party who transfers a paper without recourse is held still to guarantee the validity of the paper." These exceptions are overruled.

9. We must overrule this exception, for even although the plaintiff did express some dissatisfaction with this paper when the trade was being discussed between the parties, yet the plaintiff relied upon the solemn assurance of the defendants that the papers were all right.

10. We hold the defendants were bound to warrant the soundness of the chose in action assigned and there is no evidence that the plaintiff ever voluntarily assumed the risks as to the genuineness of the paper. *Strange* v. *Ellison, supra.* These matters were submitted to the jury for their arbitrament, and they have decided adversely to the defendants. This exception is overruled.

11. The Circuit Judge was requested to charge: "That if the jury find from the testimony that the real consideration was for the account which the defendants held against Dan Mitchell, and that the note and mortgage were merely transferred as collateral to secure said account, then the plaintiff could not recover, and the jury must find for the defendants." The Judge was right in refusing to charge as requested, because he said: "That I refuse to give you for the reason that if he transferred the account, and with that account transferred a mortgage, and that mortgage purported to be a genuine mortgage as collateral security, the party would warrant the mortgage for genuine, and if it turned out to be fraudulent or a forgery, he could not retain the money under these circumstances."

The Circuit Judge was unquestionably correct, the trend of the testimony submitted established the fact that the account held by the defendants against Dan Mitchell was unsecured except by this chose in action, and it was natural for the jury to hold that the chose in action was taken and held by the defendants at the inception of that transaction with Dan Mitchell as a protection for the lien, given by him to them. This exception must be overruled.

It is the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.