COMMISSIONER OF BANKS *vs.* SAMUEL WEISBERG & another.

Suffolk.    March 24, April 17, 1924. — May 23, 1924.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & WAIT, JJ.

*Equity Jurisdiction,* Suit by commissioner of banks to compel discharge of mortgage alleged to have been given in fraud of creditors and stockholders of trust company in his possession.   *Estoppel.*

A bank incorporated under the laws of this Commonwealth purchased certain real estate to be used in its business and had the title taken in the name of an individual subject to a first mortgage, the individual on the same day executing and delivering to the bank a note secured by a second mortgage. Subsequently, the individual conveyed the real estate to the bank subject to the two mortgages, and the bank's treasurer executed a discharge of the second mortgage. Neither the discharge of the mortgage nor the deed to the bank were placed on record at that time. The bank then conveyed the property to a second individual, who gave back a note secured by a mortgage, both of which were recorded. The bank, through its president, then secured a loan from one who accepted therefor notes of another corporation in which the officers of the bank were interested and, as security, an assignment of the second mortgage, then still undischarged of record, the bank receiving the money thus raised and using it in its business. The person loaning the money had no knowledge of the discharge of the second mortgage of which he thus had received an assignment. The commissioner of banks, having taken possession of the business and property of the bank, brought a suit in equity to have the assignment of the mortgage to the money lender declared void and to have the discharge of the mortgage confirmed.   *Held,* that

(1) The commissioner of banks had no other or greater rights in the premises than those of the bank which he was liquidating;

(2) It appearing that the assignment to the money lender was executed by the president of the bank in the absence of the treasurer on account of illness, that the president at that time was in full control of all the bank's activities, that he was given authority by a vote of directors to " pledge, hypothecate or assign any of the notes " of the bank and to execute and acknowledge in the bank's name all necessary papers, and that the money was received by the bank from the defendant and was used by it, the rights of the defendant could not be affected by the provisions of a by-law defining the president's duties;

(3) The mere fact that, at the time the defendant made his loan to the bank, there was on record a mortgage, dated after the one of which he took an assignment, which stated that it was subject only to the first mortgage above described, did not constitute constructive notice to

the defendant of the discharge of the mortgage of which he took an assignment;

(4) The commissioner of banks as between the parties to the suit was estopped to deny the validity of the mortgage of which the defendant had taken an assignment, and a court of equity would not compel the discharge of that mortgage;

(5) Evidence relating to the state of an account between the bank and a company in which its officers were interested and in whose name the notes to the defendant were made, was rightly excluded at the trial of the suit, it not appearing that the defendant had any knowledge of transactions between the bank and that corporation.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on November 16, 1921, and afterwards amended, by the commissioner of banks in possession of the property and business of H. Slobodkin, Inc., seeking to have declared void an assignment to the defendant Samuel Weisberg by H. Slobodkin, Inc., through its president, of a mortgage given to H. Slobodkin, Inc., by one Clayton, which the plaintiff alleged had been discharged, and to have the discharge of the mortgage confirmed.

The suit was referred to a master. Material findings by the master are described in the opinion. Exceptions by the plaintiff to the report were to findings by the master or failures by him to make certain findings. An interlocutory decree overruling the exceptions and confirming the report was entered after hearing by order of *Carroll*, J. The suit then was heard by *Pierce*, J., who ordered a decree dismissing the bill, and, at the plaintiff's request, reported the suit upon the pleadings, the master's report, the plaintiff's exceptions thereto, and the interlocutory decree for determination by the full court.

*M. H. Sullivan*, for the plaintiff.

*J. C. Johnston*, (*G. E. Richardson* with him,) for the defendant.

DECOURCY, J. In June and July, 1921, H. Slobodkin, Inc., a private bank, was having great difficulty in meeting its daily clearing; in other words, it did not have on hand, or found it difficult to procure, the amount of cash necessary to meet the checks drawn against it and presented from day to day through its correspondent bank and the Federal

Reserve Bank.   G. Willis Slobodkin was president, and was actively conducting the business, owing to the illness of the treasurer, Hyman E. Slobodkin.   On July 13, 1921, the Slobodkin bank was without sufficient funds to meet its clearing: — and G. Willis arranged for a loan of $3,000 from the defendant Weisberg, whose business consisted largely of making loans secured by collateral.   It was understood by the parties that the loan was to be made to the bank, although the notes therefor were made in the name of Boston Ignition Company, another Slobodkin concern, to prevent other banks which might rediscount the notes from learning that the Slobodkin bank was borrowing money.   The loan was used entirely for the benefit of the bank: the president first taking up the checks held by the correspondent bank, then those held at the Federal Reserve Bank, and turning in to the office of the Slobodkin bank these checks and the balance of the cash.

Part of the security given to Weisberg was a mortgage for $3,000 on the property numbered 12, 14, 16 on Causeway Street, Boston, which was held by the bank, and is the subject of this suit.   As the master finds, this property was purchased by H. Slobodkin, Inc. on October 31, 1919. The title was taken in the name of Edward Clayton, a straw man, and was subject to a mortgage of $13,500, held by the Home Savings Bank.   Clayton on the same day executed and delivered to H. Slobodkin, Inc. the note for $3,000, secured by said mortgage: and he held the title to the property, subject to these two mortgages, until June 16, 1921, when he conveyed the title to H. Slobodkin, Inc. at its request and subject to the two mortgages of record.   At the same time, the bank, through its treasurer, Hyman E. Slobodkin, executed a discharge of said Clayton mortgage; but neither this discharge nor the deed to the bank had been recorded when Weisberg on July 13, 1921, had the title examined and made his loan.   On said June 16 the bank also conveyed the title to one Louis Pearl, another straw man, who thereafter held it for the bank; and on the same day Pearl gave back a note for $4,000, payable to H. Slobodkin, Inc. and secured by a mortgage on the property reciting that

it was subject to the savings bank mortgage for $13,500. The deed to Pearl and mortgage back, were recorded on June 27, but Weisberg had no actual knowledge of their existence, and his attorney did not discover the record. The commissioner of banks took possession of the property and business of the Slobodkin bank on July 18, 1921. In September Pearl conveyed to him the title to the Causeway Street property, subject to incumbrances of record.

This bill in equity, to have the assignment of the Clayton mortgage annulled, was brought on the theory that the Weisberg $3,000 loan was really made to the Boston Ignition Company, and not to H. Slobodkin, Inc.; that the latter received none of the money; thât Weisberg knew or had notice that the Clayton mortgage had been discharged; and that he and G. Willis Slobodkin had conspired together for the purpose of defrauding the creditors of H. Slobodkin, Inc. These contentions have all been disposed of adversely to the plaintiff by the findings of the master. From the beginning H. Slobodkin, Inc. was the real owner of the Causeway Street property, and of the Clayton mortgage; that bank borrowed and used for its proper purposes the money obtained from Weisberg; and it held and assigned the Clayton mortgage to Weisberg, who was ignorant of the fact that a discharge of the mortgage was in the possession of the bank. The commissioner of banks has no other or greater rights in the premises than those of the bank which he is liquidating. There are no intervening rights of third persons involved in the present suit. His present contention is that G. Willis Slobodkin had no authority to execute the assignment. Assuming that such claim is open to him, it is enough to direct attention to the findings of the master that " when G. Willis Slobodkin executed the assignment of the Clayton mortgage to Weisberg he was, with the knowledge and consent of all of the officers, stockholders and directors of the Slobodkin Bank, in full control of all of the activities of the bank; that the treasurer, Hyman E. Slobodkin, was at that time giving little or no attention to the bank's affairs and that this was known to the other officers, stockholders and directors." There was also a vote of the directors on

February 24, 1921, authorizing the president, G. Willis Slobodkin to " pledge, hypothecate or assign any of the notes " in the possession of the corporation, and " to execute and acknowledge in the name of the Corporation all necessary papers." The argument that this vote was in conflict with the provisions of the by-laws of the bank cannot avail the plaintiff. The rights of the defendant could not be affected by the provisions thereof defining the rights of the officers, as he was ignorant of them; and the assignment was signed by the president, who was acting within the apparent scope of the authority which the corporation held him out as possessing. *Produce Exchange Trust Co.* v. *Bieberbach,* 176 Mass. 577, 581, 582. And see *Commonwealth* v. *Reading Savings Bank,* 137 Mass. 431, 438 *et seq.*

The plaintiff further contends that the defendant acquired no rights in the Clayton mortgage on the ground that he had constructive notice of its discharge, because in the registry of deeds there was recorded a deed of the Causeway Street property from H. Slobodkin, Inc., the owner of the mortgage, to Louis Pearl, which recited that it was made subject to the mortgage to the Home Savings Bank, and made no mention of the Clayton mortgage as outstanding. Whatever effect this record might have upon the rights of the defendant if it were set up by a party other than the Slobodkin bank and its privy, the commissioner of banks, as between the parties to this suit the plaintiff is estopped to deny the validity of the Clayton mortgage as an outstanding security. The bank obtained the loan from the defendant on the express or implied representation that such was the fact, and by suppressing the discharge which was in its possession at the time. *Dodge* v. *Pope,* 93 Ind. 480. *Westerman* v. *Corder,* 86 Kans. 239. *Graham* v. *Thompson,* 55 Ark. 296. And see *Evans* v. *Forstall & Jumonville,* 58 Miss. 30; *Kiefer* v. *Rogers,* 19 Minn. 32, 37; *Rollins* v. *Quimby,* 200 Mass. 162. Bigelow on Estoppel (6th ed.) 682. On the facts as shown, the petitioner is not entitled to the aid of a court of equity in compelling the defendant to discharge the Clayton mortgage, especially as the Slobodkin bank, to whose rights the petitioner succeeds, received the defendant's $3,000 on the

security of that mortgage, used the money for its own corporate purposes, and has not offered to return the same.

There was no error on the part of the master in disregarding the evidence relating to the state of the account of the Boston Ignition Company with the Slobodkin bank, and the entries relating to that account on the books of the bank. The defendant, Weisberg, had no knowledge of the transactions between these Slobodkin concerns; and his rights could not be affected by the bookkeeping entries of which he had no knowledge.

*Bill dismissed with costs.*