13159

THOMPSON, ADMINISTRATOR, v. HUDGENS *ET AL.*

(159 S. E., 807)

452

454

456

458

461

464

*Messrs. D. W. Robinson* and *D. W. Robinson, Jr.,* for appellant, James E. Peurifoy, Rec'r,

*Messrs. Allen & Doyle,* for plaintiff, respondent,

*Messrs. Watkins & Prince,* for respondent, Mrs. Annie J. Hudgens,

May 28, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the administrator of the estate of W. K. Hudgens, deceased, was commenced in the Court of Common Pleas for Anderson County, March 25, 1929, for the purpose of calling in the creditors, marshaling the assets of the estate, and determining the rights of the parties thereto. The particular property involved in this appeal is .81 of an acre of land in the Town of Piedmont, Greenville County.

The case was tried by Honorable M. L. Bonham, Circuit Judge (who has since been elected a member of this Court), without a jury. The facts and issues involved are fully stated in the decree issued by his Honor, Judge Bonham, and for the reasons stated therein it is the judgment of this Court that the judgment of the lower Court be, and is hereby, affirmed.

Note. Let the decree of the Circuit Judge be reported.

MR. JUSTICE STABLER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.

MR. JUSTICE COTHRAN concurs in part and dissents in part.

MR. CHIEF JUSTICE BLEASE disqualified.

## ON PETITION FOR REHEARING

*Per Curiam.*

The Court being satisfied that in considering the exceptions and passing upon the appeal in this case no material matter was overlooked by the Court, a rehearing is refused, and the petition dismissed.

MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE COSGROVE concur.

MR. JUSTICE COTHRAN (dissenting):

The opinion heretofore filed by me, "for modification," is withdrawn, and the following opinion is submitted as a dissent from the proposed order refusing the petition, and is to be considered also as an opinion proposing to modify the decree appealed from.

This is an action to marshal the assets, to sell the real estate in aid of the personalty to pay debts, and to settle the estate of W. K. Hudgens, deceased, who died July 7, 1928, insolvent and intestate. His heirs at law are the widow and four children, defendants; the personal representative of his estate is the plaintiff, W. E. Thompson, administrator.

The only questions presented in this appeal which I deem it necessary to discuss relate to the claim of Peurifory, receiver of the American Bank & Trust Company, to partici-

pate in the distribution of the assets of the estate as both a preferred and secured creditor.

The issues of law were presented to his Honor, Judge Bonham, then Circuit Judge, upon an agreed statement of facts, and certain testimony taken before him.

On July 29, 1930, his Honor filed a decree in favor of the administrator and the widow's claim of dower, disallowing the claim of Peurifoy, receiver, except to a limited amount.

The issues of law arise out of the following facts, very greatly condensed; a detailed statement of them appears in the Circuit decree.

W. K. Hudgens was the owner of two mortgages executed by one Washington; one for $4,000.00 given to W. H. Poole, which was later assigned to W. K. Hudgens, and a junior mortgage given by Washington to Hudgens. Thereafter Washington conveyed the property covered by the mortgages to Hudgens, who retained them in his possession. Some three years later, Hudgens borrowed a large sum of money, nearly $10,000.00, from the American Bank & Trust Company, and as collateral, with other securities, assigned the $4,000.00 Poole mortgage to the bank.

In brief, the contention of the administrator is that, when Hudgens took a deed from Washington for the property covered by his mortgages, there resulted a merger of the mortgages in the deed; that the mortgages, and particularly the Poole mortgage which Hudgens assigned to the bank, were satisfied, and that Hudgens had nothing to assign. The contention of the bank is that, whether there was a merger or not, Hudgens, by representing that the Poole mortgage was a valid mortgage, was estopped from asserting merger, and that as against the estate of Hudgens, represented in this action by his administrator and his heirs at law, the mortgage is a valid and subsisting lien upon the property covered by it, upon which the bank is entitled to realize, in preference to the claims of other creditors of Hudgens and the widow's claim of dower.

In reference to the issue of merger, his Honor, Judge Bonham, in his decree, after reciting the evidence, held that "the conclusion is irresistible that there was a merger of the mortgages in the title." The reasoning and conclusion of his Honor upon the issue are entirely satisfactory; under the circumstances there does not appear any reason for an inference that Hudgens, at the time of the transaction, intended to leave the mortgages open, nor is there a circumstance to indicate that it would have been to his interest at that time to have so intended, in the absence of any intervening deed or incumbrance against which he needed protection, so far as appears.

Upon the issue of estoppel, his Honor held: "The assignor of a note and mortgage warrants their validity; he impliedly asserts that they are true and vital papers, and that the mortgage is a lien on the property. It is so held by our Supreme Court in several cases, cited by counsel for the bank, of which that of *Hall v. James T. Latimer & Son,* 81 S. C., 90, 61 S. E., 1057, is especially noteworthy. Estoppel arises when a person by his conduct, or language, or silence amounting to representation, or a concealment of material facts, induces another to change his position to his hurt. *Cannon v. Baker,* 97 S. C., 116, 81 S. E., 478, and numerous other cases. When W. K. Hudgens assigned this mortgage and note to the bank he by implication declared them to be valid subsisting obligations, and he in effect warranted that the mortgage was a lien on the real estate which it covered. When he received from the bank a loan of money which was made in reliance upon such implied representations he estopped himself to deny the validity of the papers. 41 C. J., 443."

There is no exception to the decree upon this issue, and it must be sustained as the law of the case. The conclusion is right, as demonstrated by the following authorities:

In 21 C. J., 1146, it is said: "A mortgagor or judgment debtor who makes a false statement, orally or in writing, to

influence the assignment of the security or judgment, is estopped from taking advantage of it as against an innocent assignee who has relied thereon. * * * So, too, the holder of mortgage notes who induces a purchaser to take them by representation that the mortgage is a paramount lien is estopped to assert that there is a prior mortgage."

In 1 Jones on Mortgages (6th Ed.), § 853, it is said: "After the owner of lands has taken an assignment of the mortgage to himself, and then assigned it to another as a valid security, he is estopped from insisting, as against the assignee or any one claiming under him, that it had merged in the equity of redemption. It is immaterial in such case that the remedy at law upon the note which accompanied the mortgage was barred: that does not affect the validity of the mortgage or the remedy upon it. It is immaterial, too, that the person who claims the benefits of a merger is a purchaser from the former owner by a deed made after the assignment of the mortgage by his grantor was recorded; for then the same record which informed him of the facts, which at common law would constitute a merger, also notified him of the assignment which created the estoppel. If he has purchased by deed of warranty, he may have a remedy upon the covenants, but he cannot resist the foreclosure of the mortgage."

In *Hall v. James T. Latimer & Son*, 81 S. C., 90, 61 S. E., 1057, 1060, the Court said: "We hold the defendants were bound to warrant the soundness of the chose in action assigned, and there is no evidence that the plaintiff ever voluntarily assumed the risks as to the genuineness of the paper."

In 1 Jones Mortg. (7th Ed.), § 824-a, it is said: "It is generally held that the assignor of a bond and mortgage impliedly warrants their validity, and is liable for a breach of such implied warranty, if he had knowledge at the time of the transfer of their invalidity. * * * The assignor impliedly warrants that the mortgage is a subsisting lien on

the property described therein, and if the assignor has previously released part of the property, he will be liable on such implied warranty. * * * It has been held that the assignor of a mortgage is estopped to deny its validity against his assignee. An assignment impliedly warrants the genuineness of the mortgage."

In 21 C. J., 1111, it is said: "If, in making a contract, the parties agree upon or assume the existence of a particular fact as the basis of their negotiations, they are estopped to deny the fact so long as the contract stands, in the absence of fraud, accident or mistake. There can, of course, be no estoppel as to matters not included in the contract."

In *Powell v. Smith,* 30 Mich., 451, it was held, quoting syllabus: "The owner of lands who treats a mortgage upon the same, which has been assigned to him, as a valid instrument, and transfers it as such, is estopped from insisting, as against the assignee or any one claiming under him, that in his hands it had merged and disappeared in the fee."

In *Commissioner v. Weisberg,* 249 Mass., 357, 143 N. E., 910, it was held, quoting syllabus: "A bank having obtained loan on express or implied representation that mortgage assigned was outstanding, is estopped to deny validity of mortgage as outstanding security, notwithstanding that lender had constructive notice from records that mortgage was discharged."

Another ground upon which the estoppel of Hudgens may be sustained is that where one accepts the benefit of a transaction he may be estopped from questioning the existence, validity, and effect of a deed or mortgage under which he has profited. *Smith v. Oglesby,* 33 S. C., 194, 11 S. E., 687; *Charleston v. Caulfield,* 19 S. C., 201; *McDaniel v. Anderson,* 19 S. C., 211; *Parker v. Parker,* 52 S. C., 382, 29 S. E., 805; *Walker v. Frazier,* 2 Rich. Eq., 99.

In 21 C. J., 1210, it is said: "By the acceptance of benefits one may be estopped from questioning the existence, validity and effect of a deed or mortgage."

At page 1206: "Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith. And the estoppel thus created is operative against his personal representatives."

At page 1209: "It has been repeatedly held that a person by the acceptance of benefits may be estopped from questioning the existence, validity and effect of a contract."

The liability of Hudgens upon the assigned mortgage may be sustained upon another ground, which really embodies the same principle of estoppel.

By the assignment of the mortgage to the bank, which had no suspicion that the mortgage was other than a valid one payable to Hudgens, he impliedly warranted its validity at that time; it must therefore in equity be so considered, and as being reissued by Hudgens.

In 41 C. J., 702, it is said: "Wherever equity keeps alive a mortgage which otherwise would be extinguished by payment or merger, the holder thereof has the right to reissue or reassign it as a valid security."

In *King v. Briarwood Land Co.* (Sup.), 131 N. Y. S., 946, it was held, quoting syllabus: "The owner of the fee could reissue the mortgage after its discharge, or estop itself from denying reissuance, so far as the estate then owned by him, but not to the prejudice of liens attaching prior to the reissuance."

It is settled then that there was a merger of the Poole mortgage in the deed of the mortgagor Washington to Hudgens, dated December 5, 1923; it is as clearly settled by the decree, unappealed from upon the issue, and unquestionably the law, that Hudgens in his lifetime was estopped from asserting that merger, and was conclusively bound, by his assignment of the mortgage to the bank, to recognize it as a valid enforceable mortgage, as of the date of the assignment, April 12, 1926, more than two years prior to the date

of his death, July 7, 1928. At the time of his death then, the bank held a valid and enforceable mortgage upon the property as unassailable as any other subsisting obligation of Hudgens, by his administrator or by his heirs at law. Nothing has happened, so far as the record shows, since his death, to impair the validity of the obligation admittedly valid. " * * * In the place where the tree falleth, there it shall be."

The Circuit decree adjudges that the bank, notwithstanding the fact conceded in the decree that it held a valid and enforceable mortgage at the time of the death of Hudgens, must take its place in the bread line, along with all other unsecured creditors, upon the ground that the administrator, not being in privity with the intestate Hudgens, is not bound by the estoppel which bound him.

The bank is not called upon to invoke the principle of estoppel as operating against the administrator; its position is that the conduct of Hudgens created an obligation upon him that the asisgnment of the mortgage inescapably recognized it as a valid and enforceable mortgage, a fact that he was estopped from denying, and that he died with this obligation subsisting, as much so as if he had on that day executed a new mortgage. There manifestly was no necessity for the bank to rely upon any estoppel against the administrator. Hudgens had made the contract; the execution of the note to the bank was a contract; the assignment of the mortgage to the bank was a contract; the pledge of the mortgage as collateral to the note was a contract; all of this had been consummated before the death of Hudgens; and, when he died, the mortgage as well as every other subsisting obligation became binding upon the estate, regardless of any question of the descent of the estoppel against Hudgens upon his administrator.

I recall the case of *Lites v. Addison*, 27 S. C., 226, 3 S. E., 214. There the maker of a past-due note was asked by one who contemplated its purchase, whether the note was

"all right"; the maker replied that he had given the note, that it was "all right" and that he expected to pay it in January; the maker being sued upon the note set up the defense of failure of consideration. The Court held that he was estopped by his representations. If the action had been against the administrator of the maker, could it have been insisted that the administrator was not bound by the estoppel which bound the maker? I hardly think so.

If Hudgens had been sued during his lifetime for the foreclosure of this mortgage, there could have been no doubt of the recovery by the bank of a judgment of foreclosure. It appears to me incongruous to hold that, if after his death suit had been brought, his administrator could successfully defend by asserting that the estoppel against Hudgens would not extend to him.

In 11 R. C. L., 163, it is said: "Another statement of the rule is that, with the exception of contractual obligations of a personal nature, all contracts which are capable of being enforced against a decedent in his lifetime may be enforced against his estate."

Hudgens could just as well have given a mortgage to the bank to secure the loan, and this doubtless would have been insisted upon if Hudgens had not at least impliedly represented that he owned the mortgage instead of the title to the property.

His general creditors could not have complained so long as it appeared that the mortgage had been given for a present advance. He did what was equivalent to giving a new mortgage.

Another reason why the matter of the estoppel against Hudgens extending to the administrator is negligible in this case, is that as administrator he has no interest in the controversy between the bank and the unsecured creditors. They are parties to the action, and are assumed to take care of their respective interests. The administrator is interested in seeing that no improper claim is made against the estate;

but where the estate is insolvent, it does not make a particle of difference to the administrator whether certain priorities are awarded to certain creditors or not. There is no controversy in this case as to the validity of the bank's note. Again, he has no interest in the controversy for the reason that the decision involves rights and interests in the real estate with which he has nothing to do. The agreement of Hudgens, implied from his assignment of the mortgage, that it was a valid charge upon the land, affected the land the title to which was in the heirs at law, between whom and Hudgens there was such privity as to hold them bound by the estoppel which bound him.

The disposition of the question of dower by the Circuit decree is satisfactory.

The lien of the bank's assigned mortgage would take precedence over the claims of unsecured creditors as of the date of the assignment by Hudgens; the claims of secured creditors who have obtained liens since that date should be passed upon in a subsequent decree.

I think it plain that the decree should be modified as herein indicated, and that for that reason the petition for a rehearing should be granted.