MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES CARTER, BAKER and FISHBURNE concur.

15034

HAM v. MULLINS LUMBER CO. *ET AL.*

(7 S. E. (2d), 712)

68

June, 1939.

Order of Judge Dennis follows:

This case was appealed to the Court of Common Pleas for Marion County from the decision and award of South Carolina Industrial Commission in favor of the defendants.

By agreement of the parties, arguments on such appeal were heard by me at Darlington on March 30, 1939.

The testimony contains no conflict on any material point, although the parties differ as to the legal conclusions to be drawn therefrom. The undisputed evidence is as follows. For some years prior to his death on August 6, 1937, J. L. Ham was employed by Mullins Lumber Company as a woods foreman. On May 25, 1937, Mullins Lumber Company notified South Carolina Industrial Commission, in writing, of its election to bring itself and certain of its employees, including J. L. Ham, under the provisions of the South Carolina Workmen's Compensation Act, Act July 17, 1935, 39 St. at Large, p. 1231, as amended. Mullins Lumber Company then notified its said employees, including J. L. Ham, that they were so covered and insured without cost to them. At the time of such election and notice American Mutual Liability Insurance Company was carrying insurance coverage for the protection of Mullins Lumber Company against liability under the Act to its said employees, or their beneficiaries, for injury or death, in the course of their employment. On August 6, 1937, J. L. Ham was injured in an accident arising out of and in the course of his employment, and he died the same day as a result of such injuries. His dependents and beneficiaries under the South Carolina Workmen's Compensation Act are his widow, Mrs. Lelia V. Ham, and his two minor children, Virginia Ham and Edith Nell Ham. For a year prior to his death, the average weekly earnings of J. L. Ham were $210,435.

Notice of claim was duly filed by the widow on behalf of herself and the said children. Hearing was held at Mullins, S. C., April 15, 1938, before Commissioner John W. Duncan. He filed an opinion and award on June 22, 1938, in which he found in favor of claimants for the sum of $12.86 per week for 350 weeks from the date of death of deceased, and also for funeral expenses.

From such opinion and award defendants appealed to the Full Commission on the sole ground that the award was contrary to the provisions of Sections 14(b) and 5(b) of the South Carolina Workmen's Compensation Act, in that there was no showing of an election to come within the terms of the Act by deceased employee. Notice to that effect was given by the Commission to counsel for plaintiff. After arguments were submitted, on October 25, 1938, the majority of the Full Commission filed its opinion and award, in which it found in favor of the defendants and set aside the award of the hearing commissioner, stating that it did so for lack of jurisdiction.

In due time plaintiff served notice of appeal and grounds of appeal. The grounds of appeal are twenty-two in number, but as I see it, there are four basic questions in the case. Answering the first and second will decide the case, but in order to cover all of its important aspects, I will discuss the other two also. The four questions may be stated as follows:

1. Should the findings of the majority of the full commission have been confined to the scope of the sole exception of defendants to the award of the hearing commissioner, and to the sole issue that the parties were notified by the commission that they would be required tomeet?

2. Is plaintiff entitled to recover under the provisions of Sections 14(b) and 5(b) of the South Carolina Workmen's Compensation Act?

3. Did the majority of the full commission commit error of law in finding that there was no evidence of notice of election given by employer to decedent, and that notice was not given?

4. Are defendants estopped to deny liability?

1. Should the findings of the majority of the full commission have been confined to the scope of the sole exception of defendants to the award of the Hearing Commissioner, and to the sole issue that the parties were notified by the commission that they would be required to meet?

When defendants appealed from the opinion and award of the hearing commissioner, they did so on a single exception, and counsel were served by the commission with notice that the question in dispute was "that the award is contrary to the provisions of Sections 14(b) and 5(b) of the South Carolina Workmen's Compensation Act in that there was no showing of an election to come within the terms of the Act by the deceased employee." In its opinion the majority of the full commission reviewed the entire case and made complete and fresh findings of fact and law. Counsel for plaintiff argued before me that such opinion is erroneous, in that it should have been addressed only to the question raised by the exception of defendants. Counsel for defendants argued, however, that the procedure followed was correct, and that a single exception of any sort reopens the entire case for review.

Review by the Commission is provided for in Section 59 of the Act, which is as follows: "If application for review is made to the commission within fourteen days from the date when notice of the award shall have been given, the Commission shall review the award, and, if good grounds be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award."

If there is such a thing as due process of law, under it a litigant is entitled to notice of the issues to be met on trial, hearing or appeal. The notice of the commission stated the issue to which both sides and the commission should address themselves. Counsel did so, and did not argue questions of fact or law not germane to the question stated in the notice. However, the Commission did not confine itself to that question, but rewrote the entire case. If it were correct in doing so, then it seems to me that every party who goes before the commission on appeal must argue every point of law and fact in the case, or which might conceivably enter into it, regardless of the scope of the exceptions of the party appealing, and must

ask that further evidence of the most exhaustive character be taken on all of such points. Otherwise a party in whose favor the hearing commissioner had made certain findings of fact and law, from which there was no appeal, might learn to his consternation that the commission had gone so far as to reverse such findings. He would discover further that its findings as to facts contradicted ever so slightly in the testimony were final under the terms of the Act, and that he was left absolutely without further remedy, although he had been given no notice to submit other argument on those points or to request that the commission take further testimony which would have resolved any apparent doubt in his favor. The only safe procedure would be to start over and have a complete and exhaustive trial *de novo* before the full commission in every case. In that event the entire proceeding before a hearing commissioner and his opinion would be a mere waste of time, effort and expense, and would amount to nothing at all. I do not think Section 59 of the Act should or can be construed in that way. Moreover, in my opinion, such procedure would be violative of due process of law and contrary to orderly judicial procedure and administration of justice. As was said by the Supreme Court of the United States in the case of *Powell v. Alabama,* 287 U. S., 45, at page 68, 53 S. Ct., 55, at page 64, 77 L. Ed., 158, at page 170, 84 A. L. R., 527 : "It never has been doubted by this Court, or any other so far as we know, that notice and hearing are preliminary steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law. The words of Webster, so often quoted, that by 'the law of the land' is intended 'a law which hears before it condemns,' have been repeated in varying forms of expression in a multitude of decisions. In *Holden v. Hardy,* 169 U. S., 366, 389, 18 S. Ct., 383, 387, 42 L. Ed., 780 (790), the necessity of due notice and an opportunity of being heard is de-

scribed as among the 'immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' And Mr. Justice Field, in an earlier case, Gaplin v. Page, 18 Wall., 350, 368, 369, 21 L. Ed., 959 (963, 964), said that the rule that no one shall be personally bound until he has had his day in Court was as old as the law, and it meant that he must be cited to appear and afforded an opportunity to be heard. 'Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered.' Citations to the same effect might be indefinitely multiplied, but there is no occasion for doing so."

I am of the opinion and hold that all findings of fact and law by the hearing commissioner became and are the law of this case, except only those within the scope of the exception of defendant and the notice given to the parties by the commission; and that the sole question remaining in the case at the time of its appeal to the Commission was, and now is, whether the award was contrary to the provisions of Sections 14(b) and 5(b) of the Workmen's Compensation Act, in that there was no showing of an election by decedent to come within the terms of the Act.

2. Is plaintiff entitled to recover under the provisions of Sections 14(b) and 5(b) of the South Carolina Workmen's Compensation Act?

Section 14(b), as amended by Act March 26, 1937, 40 St. at Large, p. 153, is as follows: "This Act shall not apply to casual employees, farm laborers, Federal Employees in South Carolina and domestic servants; nor to any person that has regularly employed in service less than fifteen employees in the same business within this State, nor to employees or employers principally engaged in the business of operating a saw mill, and/or manufacturing of shipping containers, nor to logging operations and work incident

thereto, nor to employees or employers engaged in the production of turpentine, nor to steam laundries, rock quarries, sand mines, and oil mills, and State and County Fair Associations, unless such employees and employers, voluntarily elect to be bound by this Act, as provided for in Section 5, Sub-division (b)."

And Section 5(b) is as follows: "Any person, firm or corporation employing employees in the State of South Carolina and exempted from the mandatory provisions of this Act may come in under the terms of this Act and receive the benefits hereof and be subject to liabilities hereof by filing with the Industrial Commission a written notice of their desire to be subject to the terms and provisions of this Act. Should said notice be given before August 1, 1935, then the said person, firm, or corporation shall come under the terms of this Act on its effective date, that is, September 1, 1935, but should the said notice be given after August 1, 1935, then they shall come under the provisions of this Act and be affected thereby thirty days after the date of said notice."

Before beginning an analysis of these sections it is well to observe that the general and well-established rule in construction of compensation acts is that they are intended to be for the benefit of employees and must be construed liberally in their favor. In this connection, I think the following quotations fairly reflect the generally accepted rules of construction, in the light of which the present controversy undoubtedly should be considered.

" * * * They (the Courts) have broadly held that the Acts are to be interpreted in the light of, or so as to promote, their purposes or objects, with reference to their subjects, and in the light of, or so as to remedy, the ills or evils they were designed to remove; that the acts are to be construed according to, or so as to effectuate the Legislature's intent or purpose; * * * and that humane principles should guide interpretation of the Acts. On the various grounds that the Acts are remedial in their nature,

that they are commendable legislation, that they have a beneficent purpose, that they are enacted for humane purposes, are grounded in justice * * *, the Courts have very generally held that they should, must or will be accorded a liberal or broad construction or interpretation, in order to promote, or effectuate their purposes, or that they will be given such construction in order to promote justice and the public welfare, the spirit, reason, or intent of the laws, and not the latter, controlling, and technical rules and refinements not being permitted to defeat their purposes * * *." Extracts from 71 C. J., pages 341-350.

"In addition to cases holding that workmen's compensation acts should be given interpretation in favor of the employee, a number of cases hold that the acts should or must be construed fairly, reasonably, or liberally in favor of or for the benefit, of employees or their dependents, all doubts as to the right to compensation being resolved in their favor, and all presumptions indulged being in their favor; * * *." 71 C. J., pages 351-353.

It is also to be observed that the Supreme Court of South Carolina has adopted these general principles of construction. As was said by Mr. Justice Fishburne, speaking for the Court in the case of *Rudd v. Fairforest Finishing Company et al.*, 189 S. C., 188, 200 S. E., 727, 729: "Compensation laws should be given a liberal construction in furtherance of the beneficent purpose for which they were enacted, and if possible, so as to avoid incongruous or harsh results. *Baltimore & Philadelphia Steamboat Company v. Norton*, 284 U. S., 408, 414, 52 S. Ct., 187, 189, 76 L. Ed., 366."

See, also, the case of *Marchbanks v. Duke Power Co. et al.*, 190 S. C., 336, 2 S. E. (2d), 825. In his opinion in that case Mr. Justice Bonham discusses the principles, citing and quoting various authorities in support thereof.

From a general reading of the provisions of the Act ██ it is perfectly plain that its basic purpose is inclusion of employers and employees, and not their exclusion, and that its presumptions and its penalties are directed

toward the end of effecting coverage rather than noncoverage. At the outset of the analysis of the sections involved it is to be noted that logging operations are exempted from the mandatory provisions of the Act, unless, as stipulated in Section 14(b), the employers and employees waiving such exemption shall elect voluntarily to be bound, as provided for in Section 5(b); and that Section 5(b) refers only to the active method by which employers waive exemption. While these provisions are not as clearly expressed as they might be, it is obvious that the Legislature intended to allow both the exempted employer and employee to come in under the terms of the Act. To hold that the employer may elect, but that the employee cannot, would be to defeat the manifest intention of the Legislature. But the commission places a construction upon these sections which I think would likewise defeat the legislative intent, by holding "that in the final analysis the parties are to voluntarily, jointly contract in writing in order to be bound by the Compensation Act." Such an interpretation would read into the Act words which the Legislature did not write therein, and which obviously were omitted intentionally. If the Legislature had wanted to require written election by both, that could have been done very easily by the insertion of just four words toward the end of Section 14(b), to make it conclude as follows: "unless such employees and employers voluntarily elect *in writing by both* to be bound by this Act, as provided for in Section 5, Subdivision (b)," the words inserted being italicized. Or it would have been quite simple for Section 5(b) to have contained provision similar to those of Section 5(a), which require employer and employee each to give written notice in certain instances. In these circumstances the ommission of any requirement that the employee elect in writing demonstrates that the Legislature had a purpose in mind in leaving out such a requirement. In doing so it followed the general rule on this particular point:

"In general under perhaps the majority of the elective compensation acts, the election on the part of the employee is a negative one, that is, after the employer has elected to come within the Act the employee automatically comes under its operation, unless he gives statutory notice that he will not be bound by it, and this rule is applicable where the employer elects to make the act applicable to employees not otherwise subject to the act." 71 C. J., pages 522, 523.

The underlying reason for requiring positive and written action on the part of the employer to come in under the Act, while not requiring the same of the employee, is readily apparent when one considers the advantages of the former as contrasted with the disadvantages of the latter, in intelligence, education and facilities for writing. In fact, it might be said aptly that in giving written notice to the Commission the employer acts both for himself and for the employee.

In order to reach its conclusion, the commission had to construe the Act literally rather than liberally, had to read into the Act words, the omission of which by the Legislature was obviously intentional on its part, and had to violate the further legislative intent toward coverage under the Act. In doing so, I am convinced that it committed error, and that such a construction of the Act should be rejected by the Courts. Instead of straining to adopt that sort of interpretation, the Courts will follow exactly the opposite course of reasoning, in order to give the Act a liberal construction, as required under the authorities cited above, and in order to effectuate the legislative intent, which is to be done under our decisions. In the case of *Kitchen v. Southern Railway*, 68 S. C., 554, from page 563 to page 556, 48 S. E., 4, 1 Ann. Cas., 747, are to be found very excellent and enlightening quotations of authorities as to the duty of the Courts to carry out the legislative intent, and the latitude to be exercised in doing so. See, also, *Stackhouse v. County Board*, 86 S. C., 419, 68 S. E., 561; *Fulghum v. Bleakley*, 177 S. C., 286, 181 S. E., 30; *Bruner*

*v. Smith,* 188 S. C., 75, 198 S. E., 184; *Marchbanks v. Duke Power Co. et al., supra.*

It is manifest that the sections in question are not expressed as clearly as they might be. Possibly the words used are susceptible of more than one construction. However, under the rules of construction of Workmen's Compensation Acts, if possible the provisions of the Act must be reconciled, the Act sustained, and its purposes effectuated; and further, any reasonable doubt as to construction must be resolved in favor of claimants. It appears to me that the commission in its opinion followed exactly the contrary course and committed the error of adopting a construction confessedly termed "literal" by it, and of construing the sections so strictly against the plaintiff that the effect of its interpretation would be to eliminate Section 5(b) from the Act altogether and to insert into Section 14(b) a requirement that election by employers and employees must be evidenced in writing by both to the Commission and to one another.

Moreover, the commission attempted to find as a fact that decedent never contracted with his employer to be bound by the Act. That finding is really one of law, and is erroneous, in view of its being entirely unsupported by the evidence in the case and of the various other reasons set forth in this order.

Since defendants did not except to the findings of fact by the hearing commissioner, there remained in the case no question that notice of election was given J. L. Ham by Mullins Lumber Company. Such notice is set forth in the testimony as follows: "We are glad to be able to advise that we have secured insurance for you under the Workmen's Compensation Act of South Carolina. This insurance does not cost you anything at all, while it is a protection for you as well as ourselves."

Mr. Ham having received that notice and acquiesced therein for more than thirty days prior to his death, without the slightest indication of any desire on his

part to reject the same and keep himself without the provisions of the Act, it seems clear to me that he thereby became bound by the terms of the Act and subject to its liabilities and entitled to its benefits. Under the Act, therefore, plaintiff is entitled to recover for the benefit of herself and the children of decedent. Of course I do not intend to infer that an employee would not be permitted to signify in writing his election to be bound by the Act, but simply hold that his acquiescence for thirty days after notice of his employer's election signifies such election on his part just as effectively as though it had been written.

For the reasons stated, I hold that under Sections 14(b) and 5(b) : (1) Both the employer and the employee were originally exempt from the operation of the Act; (2) The employer elected to waive such exemption and make itself and the employee subject to the Act, by giving written notice of its election to the commission and also by giving notice thereof to the employee (if the employer were not required to give notice to the employee, it could, without such notice, gain for itself the benefits of the Act, while subjecting the employee to the disastrous disadvantages stipulated where the employer is under the Act and the employee is not) ; (3) The employer's election to come under the Act became effective thirty days after its giving of notice; the employee came under the Act upon his acquiescence in his employer's election for thirty days after notice thereof.

The case should therefore be decided in favor of plaintiff, without respect to Questions 3 and 4. However, even if they remained in the case, ·I do not think that they would have to be resolved in favor of plaintiff for the reasons hereinafter set forth and discussed.

3. Did the majority of the full commission commit error of law in finding that there was no evidence of notice of election given by employer to decedent, and that such notice was not given?

Since there was no exception to the hearing commissioner's finding of fact that the employer gave to certain of its employees, including decedent, written notice of election to bring itself and them within the provisions of the Act, this question became moot in the case, and the majority of the full commission committed error in making a finding to the contrary on the point. If, however, it had remained in the case, it would avail defendants nothing.

I am familiar with the decisions of the Supreme Court of South Carolina in the cases of *Murdaugh v. Robert Lee Construction Company et al.,* 185 S. C., 497, 194 S. E., 447; *Phillips v. Dixie Stores, Inc., et al.,* 186 S. C., 374, 195 S. E., 646; *Spearman v. Royster Guano Co. et al.,* 188 S. C., 393, 199 S. E., 530; *Rudd v. Fairforest Finishing Co. et al.,* 189 S. C., 188, 200 S. E., 727; and *Layton v. Hammond-Brown-Jennings Co. et al.,* 190 S. C., 425, 3 S. E. (2d), 492. The rule enunciated in those cases, as I understand it, is stated in the order of Hon. T. S. Sease, Circuit Judge, in the *Spearman case,* as follows (188 S. C., 393, 199 S. E., 532) : "That the Courts have jurisdiction to review awards of the Industrial Commission only where there is no substantial evidence to support the findings of fact of the commission, or, in other words that the Court has jurisdiction identical with the jurisdiction of the Supreme Court in jury cases in determining whether a verdict should have been directed."

There is no question as to the employer having given notice of its election to the commission, and that such notice included decedent. The contention of defendants is that no notice of election was communicated to decedent. Mr. Alford, the logging superintendent of Mullins Lumber Company, was one of those covered by the election. He testified that he received his notice, and produced the notice itself, which was introduced in evidence as claimant's Exhibit 10. Defendants objection to its introduction on the grounds: First, that it contains nothing to show that the insured comes under the Act; Second, that it is typewritten, had not been

properly identified, the witness could not remember who delivered it to him or where it came from, and that it was not signed by an officer.

Great liberality is exercised in permitting the introduction of evidence in proceedings under Workmen's Compensation Acts, and even heresay evidence may be admissible, provided it is corroborated by facts, circumstances or other evidence. See order of Judge Sease in the case of *Spearman v. Royster Guano Co. et al., supra*; also *Jeffers v. Manetta Mills et al.*, 190 S. C., 435, 3 S. E. (2d), 489, 490. However, the admissibility of this exhibit does not depend upon those cases. Aside from other corroborating facts and circumstances in the record, and the wording of the notice itself, the testimony of Mr. H. O. Schoolfield, president of Mullins Lumber Company, completely overcomes the foregoing objections. In the light of his testimony the exhibit is clearly admissible. The testimony of Mr. Schoolfield is as follows:

"Mr. King: As a result of your election, your Company's election, to come under the Workmen's Compensation Act in South Carolina, did you then cause to be notified the various employees that you had elected to bring under that act? Yes.

"Q. Was Mr. Ham one of the employees that came under, that you elected to come under? A. Yes.

"Q. Prior to your election, you were not required by the Act to come under the Compensation Act's jurisdiction? A. I understand that logging in South Carolina is exempt. We elected to come under it as far as the chauffeurs and the woods foreman and the superintendents * * *.

"Q. And Mr. Ham, the deceased, was one of your woods foremen? A. Yes."

Counsel for defendants did not ask Mr. Schoolfield a single question on cross examination. However, the hearing Commissioner interrogated him on the point as follows:

"Q. You say that Mr. Ham was included in the election to come under the Act with the truck drivers and foremen? A. Yes, his job was not particularly a truck driver but he was a foreman of the two logging crews.

"Q. They were included in your election to come under the Act? A. Yes, but his driving was from one crew to another and at the time he did drive the truck, carried the men back and forth from a pick-up truck we had."

Re-direct examination was then resumed.

"Mr. King: We would like to ask you again, Mr. Schoolfield, in your letter of May 25th, to the South Carolina Industrial Commission, notifying them of your election to come under the Act, referring to the following words 'and the two woods foremen.' A. Yes, that is right.

"Q. Mr. Ham, the deceased, was one of those foremen? A. Yes, he was one and Charlie Bryant was the other.

"Q. He was notified, you state, to come under the Act? A. I cannot state he was notified, but I think the notice you have there, I think I wrote it up myself and gave it to one of the girls in the office and asked her to write out several on the typewriter and put them in the envelopes of each one of the men who was to get them."

As observed, defendants did not cross examine Mr. Schoolfield. Neither in his testimony nor anywhere else in the record do I find any conflict in the evidence as to whether decedent was given notice of his employer's election. All of the evidence on the point positively tends to show that he was notified. It thus becomes a question of evidence or no evidence, and there is ample evidence to raise a presumption that he was given notice. In all probability it was impossible, without the testimony of the dead man, to prove beyond a shadow of doubt that he received the notice. Plaintiff was handicapped in that respect, but did everything in her power to produce all of the evidence possible on the point and arrive at the truth. She inquired of the commission and had it produce and introduce in evidence its records in the case. She subpoenaed among others

the president, bookkeeper, and logging superintendent of the employer, and put them on the stand as her witnesses. In my opinion the evidence she introduced was clearly sufficient to create a strong presumption that decedent was notified. The burden of proof thereupon shifted to defendants to rebut such presumption. Although all of the facts and evidence were known to defendants, and were either in their possession or readily accessible to them, they introduced no evidence and made no countershowing. If it had been possible to rebut the presumption referred to, defendants could easily have done so. For instance, they knew in advance of the hearing about the stenographer to whom Mr. Schoolfield gave the directions as to communication of notice, while plaintiff knew nothing about her until too late to subpoena her, but they did not produce her to testify, and the record therefore lacks her testimony, which in all probability would have proven to be very enlightening. If defendants knew of the existence of facts tending to prove that notice was not given, it was their duty to themselves and to the Court to produce such facts in testimony.

Because of Mr. Ham's death, all of the evidence proving that notice of election was received by him is necessarily circumstantial. The conclusion that such evidence is sufficient proof is sustained by the very recent decision of the South Carolina Supreme Court in the case of *Jeffers v. Manetta Mills et al., supra*. The following quotations from the opinion of Mr. Justice Fishburne therein clearly so demonstrate:

"It is also true that the proof of such facts may be established by circumstantial as well as by direct evidence. *Liquid Carbonic Co. v. Industrial Commission et al.*, 352 Ill., 405, 415, 186 N. E., 140, 87 A. L. R., 770; *Ohio Building Safety Vault Co. v. Industrial Board*, 277 Ill., 96, 115 N. E., 149; *Demastes v. State Compensation Commissioner*, 112 W. Va., 498, 165 S. E., 667; 71 C. J., page 1085. And where the circumstances surrounding the injury sustained by the deceased are such as to lead an unprejudiced mind reason-

ably to infer that it was caused by accident, the evidence need not negative all other possible causes of death, Schneider, Workmen's Compensation Law, Vol. 1, page 1013.

"There were no witnesses to the alleged accidental injury to the hand of the deceased, so that the physical facts and the justified inferences to be drawn therefrom must be considered as a determining factor in deciding the issue. * * *

"In this case we have an unwitnessed accident. Therefore it was impossible to produce anyone who actually saw it happen. If circumstantial evidence, however, is of any value, surely there was ample circumstantial evidence here, in addition to the hearsay testimony, tending to establish the fact of the accident."

The hearing Commissioner found as a fact that the notice was given by Mullins Lumber Company and received by Mr. Ham. Defendants did not except to his finding on the point, and consequently there was no duty incumbent on plaintiff to apply to the commission for further testimony to be taken thereabout on review of the case. If the commission regarded the record as inadequate or confusing, it should, of its own motion, have called for further evidence. It did not do so, but proceeded on the record to find that there was no evidence of notice of election given by the employer to decedent, and that such notice was not given. A careful reading of the record, and particularly the exhibit and testimony quoted above, clearly demonstrates that there is no conflict or contradiction which would prevent the Courts from considering and reversing the conclusion of the majority of the commission, for there is not an iota of substantial evidence to support its conclusion.

I am convinced and hold that more than thirty days prior to the death of J. L. Ham, Mullins Lumber Company gave him notice of election to bring itself and him under the provisions of the Workmen's Compensation Act, and that

the majority of the full commission committed error of law in finding to the contrary.

4. Are defendants estopped to deny liability?

When Mullins Lumber Company decided to bring itself and certain of its employees, including J. L. Ham, within the terms of the Act, it followed a line of action which had as its purpose the bringing of itself and those men under the Act. It procured insurance coverage from American Mutual Liability Insurance Company to protect itself and the men under the Act, notified the Commission of its election, and notified the men affected thereby, the form of the latter notice being: "We are glad to be able to advise that we have secured insurance for you under the Workmen's Compensation Act of South Carolina. This insurance does not cost you anything at all, while it is a protection for you as well as ourselves." Months later J. L. Ham was killed in the performance of his duty. Defendants thereupon contended that decedent was not covered by the Act, and that his beneficiaries were without its protection.

Aside from the ordinary features of insurance, in this case the interests of the insurance company are closely interwoven with those of Mullins Lumber Company. The records of the industrial commission showed that the insurance company contracted for this particular coverage. Its activity in defending the suit demonstrates conclusively that its contract for coverage included Mr. Ham, and that it was paid a premium for his protection. Otherwise it would have defended itself by proving that the contract did not include Mr. Ham, and that it had been paid no premium for his protection. There can be no doubt that defendants collaborated in the procedure followed by Mullins Lumber Company, and that the insurance company was advised of each step taken. Considering the experience of the insurer and the inexperience of the employer in such matters, the inference is not unwarranted that the former counselled and advised the latter as to how to proceed.

The contention of defendants is in effect that the procedure followed did not bring J. L. Ham under the provisions of the Act. I consider such contention absolutely untenable.

The logical view to take of the conduct of defendants is that at the time Mullins Lumber Company performed the acts referred to defendants' understanding of the law, was the same as the construction placed upon it by me, and that they considered such acts sufficient and proper to bring Mr. Ham under the Act. Otherwise they were deliberately performing a series of acts that they knew were futile and would not accomplish their apparent purpose; and Mullins Lumber Company was paying premiums to the insurance company for protection that both of them knew was unnecessary, in that no coverage under the Act was being effected. Both of them must be given credit for more business discernment than that, and for believing that coverage of decedent under the Act had been brought about. Consequently their present contention has the earmarks of an afterthought, developed subsequent to the death of J. L. Ham in an effort to avert a monetary loss.

However, even if defendants' view of the law were then the same as their present contention, that would avail them nothing, for their conduct completely estops them to deny liability. By taking such a position they would convict themselves of the most shameful and reprehensible conduct in giving decedent a notice well calculated to lead him to do nothing, thereby attempting to make him lose both his rights at common law and his potential rights under the Act. It would be very hard to compose a communication better calculated than the form of notice used to lull the employee into inactivity. Decedent was not advised that his employer had elected to come under the Act with reference to him, and that he must elect or reject. Nor was he informed simply that his employer had elected, with nothing more said. All of the language in the notice was clearly to the effect that the insurance coverage under the Act was an accomplished

fact. It contained not the slightest suggestion that anything further needed to be done by him or anyone else. Under these circumstances his silent acquiescence was most natural and reasonable. The matter is to be analyzed thus. Defendants misrepresented the true situation to decedent and concealed a portion of the same from him, knowing full well the character of such misrepresentation and concealment, and intending that decedent act thereon and govern himself thereby. Decedent knew nothing of the true situation, or of the elements concealed from him by the notice, and had no means of knowing anything about them. Under defendants' contention he was then in a position to acquire for himself and his loved ones the protection of the Act by electing, but he relied on their notice and did not serve notice of election, thereby removing himself and family from a position of potential protection to one utterly devoid of such protection. Under these facts defendants are clearly and completely estopped to deny liability, and I so hold. See *Gray Cotton Mills v. Spartanburg County Mills,* 139 S. C., 223, 137 S. E., 684; *Thompson, Administrator v. Hudgens et al.,* 161 S. C., 450, 159 S. E., 807; *Georgia Veneer & Package Company v. S. H. & E. H. Frost, Inc.,* 168 S. C., 285, 167 S. E., 500.

Defendants also contended that decedent was not given notice of his employer's election, and consequently was not covered by the Act. That contention has already been disposed of in this order. However, even if it were true that such notice was not given, defendants could not plead as a defense to the claim of decedent's heirs after his death their own failure to perform their duty to him under the law. It appears to me that in good morals, justice and law they could not do so, and that they would be estopped from doing so.

For the foregoing reasons the opinion and award of the majority of the full South Carolina Industrial Commission are hereby reversed and the original award of the hearing commissioner is hereby reinstated.

*Messrs. Elliott, McLain, Wardlaw & Elliott,* for appellants,

*Messrs. J. C. King* and *Woods & Woods,* for respondent,

March 7, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

James L. Ham, an employee of Mullins Lumber Company, died on the 6th of August, 1937, as the result of an accident which arose out of and in the course of his employment with the said company. Claim was made by Mrs. Lelia V. Ham, the widow, for compensation for herself and children, to the South Carolina Industrial Commission, within the terms and provisions of the South Carolina Workman's Compensation Act. After notice a hearing was had at Mullins, S. C., April 15, 1938, before Hon. John W. Duncan, Commissioner, at which hearing the Mullins Lumber Company and its insurance carrier were represented by counsel. The hearing commissioner filed his opinion June 22, 1938, by which he made an award in favor of plaintiff and her children.

From this award the Mullins Lumber Company and its insurance carrier, American Mutual Liability Insurance Company, asked for and were allowed a review by the full commission. In due time the full commission filed an opinion, made by the majority thereof, reversing the award made by the hearing commissioner. From this action of the full commission, the plaintiff appealed to the Court of Common Pleas for Marion County. The appeal was heard by Judge Dennis, who in due time filed an opinion by which he reversed the opinion and award of the full commission

and reinstated the opinion and award of the hearing commissioner.

. From this order comes the appeal of the defendants to this Court. .

We have reviewed with care the well-considered and logically stated order of Judge Dennis, and are in full accord with its findings and conclusions, and affirm the order.

By one of their exceptions appellants charge error to the Circuit Judge in holding that the South Carolina Industrial Commission should take jurisdiction of the case. The error being that he should have held to the contrary because of the fact that the North Carolina Industrial Commission had already taken jurisdiction of the case and had it under consideration.

We fail to find that Judge Dennis made the holding challenged in the foregoing exception. Indeed, it does not appear that that issue was ever brought to his attention. Certainly it was not presented by the 22 exceptions by which the plaintiff, in her appeal from the opinion and award of the full commission, charged error to that opinion; and it is equally certain that the appellants from Judge Dennis' order did not ask that he sustain the opinion and award of the full commission on the ground stated in the above exception.

However, lest there grow up some confusion as to the attitude of this Court on this suggested question, it is perhaps well to state here that we do not think the fact that the claimant had filed her claim with the North Carolina Industrial Commission before filing it with the South Carolina Industrial Commission deprived the South Carolina Industrial Commission of jurisdiction to hear the case. She filed her claim with the North Carolina Industrial Commission because of receipt of a statement made by the South Carolina Industrial Commission which led her to believe that they would not consider her claim. Later she formally withdraw the case from the North Carolina Indus-

trial Commission by the action of her attorneys, who said in their letter of March 11, 1938:

"March 11, 1938.

"North Carolina Industrial Commission
Raleigh, North Carolina
Gentlemen:

In re: Docket No. 7754

James L. Ham, Deceased, v. Mullins Lumber Company, Mullins, S. C.

This is to advise you that the plaintiff in the above case withdraws the request of hearing before the N. C. Commission, notice of which hearing has been received and set for March 18, 1938.

We have received copies of letters from the South Carolina Industrial Commission indicating that the Mullins Lumber Company had elected to come under the South Carolina Act. We, therefore, think it would be unnecessary at this time to try this case before the North Carolina Commission, and we are proceeding to request a hearing before the South Carolina Commission.

Yours very truly,

Britt & Britt
By: J. C. King."

On October 19, 1938, they wrote:

"October 19, 1938

"North Carolina Industrial Commission
Raleigh, North Carolina

Docket 7754

I. C. File No. 744500

Emp. Code No. 124331-N

Mrs. Lelia V. Ham (widow) etc., v. Mullins Lumber Co.

"Gentlemen:

This will acknowledge receipt of yours of October 18, 1938, setting the above case for hearing at Lumberton, on October 26, 1938, at 2 p. m., and after talking to Judge

Varser and learning that he did not request the case be put down for hearing we conclude you made a mistake in placing same on the hearing docket.

If you will refer to former correspondence you will recall that a request for hearing was made in this case in order to protect the plaintiff's rights but that the case was not to be heard until the final decision of the South Carolina Industrial Commission.

We will ask you, therefore, to continue the case as before pending the decision of the S. C. Commission.

Yours very truly,

Britt & Britt

By: J. C. King."

It is evident that the sole purpose of filing claim with the North Carolina Commission was to preserve plaintiff's rights if the South Carolina Commission denied jurisdiction.

We do not think that the action of the South Carolina Commission in trying the case was in conflict with the rule laid down in the cases of *Bannister v. Shepherd* and *Knight v. Shepherd,* both of which cases are reported in 4 S. E. (2d), 1, at page 7 and the other at page 906, and both are found in 191 S. C. (pages 165 and 452).

The facts in the present case are as follows: The Mullins Lumber Co. has its principal place of business at Mullins, S. C., which is not far from the North Carolina state line. J. L. Ham, its employee, resided at Mullins and while temporarily engaged in work for his employer on a job in North Carolina, just across the State line, went to .his job every morning and returned to his home every night. He was regularly on the payroll of the Mullins Lumber Company, at Mullins, S. C.

A review of the facts in the cases of *Bannister* and *Knight v. Shepherd, supra,* will show that the action of the South Carolina Commission, in assuming jurisdiction of the present case, is in conformity with the .rule laid down in the above-stated cases, which is thus expressed by Mr.

Justice Fishburne in the *Knight case* (191 S. C., 452, 4 S. E. (2d), 907) : "We are unable to perceive any sound reason why South Carolina should be denied the right to apply in our own Courts our own statute enacted in pursuance of State policy to provide compensation for employees suffering injury or death within the State while engaged in the course of their employment. The Workmen's Compensation Law of our State expresses our domestic policy in its application to persons and events within the State."

It is true that the accident by which J. L. Ham was injured occurred across the state line in North Carolina, but, as shown above, he was a citizen and resident of South Carolina, his employer is a corporation located in South Carolina. The deceased was on its payroll at Mullins, S. C.; he was temporarily, day by day, employed on a job for his employer just across the state line, where he was injured, and went to and from his home in South Carolina every day. Surely he was entitled to the protection of the laws of South Carolina, and his beneficiaries to the beneficent provisions thereof.

We do not think that this case is contradictory to the rule laid down in the case of *Knight v. Shepherd, supra.*

The exceptions are overruled and the order appealed from is affirmed.

Let it be reported.

MESSRS. JUSTICES BAKER and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE WM. H. GRIMBALL concur.

MR. ACTING ASSOCIATE JUSTICE E. C. DENNIS disqualified.