CREIGHTON UNIVERSITY, a Nebraska non-profit organization, Plaintiff,

v.

Oscar Budd KLEINFELD, et al., Defendants.

CIV–S 94–1594 GEB/PAN.

United States District Court, E.D. California.

Dec. 13, 1995.

Charles P. Wolff, Evans Latham Harris and Campisi, San Francisco, CA and George A. Penry, pro hac vice, Law Offices of George A. Penry, Omaha, NE, for plaintiff.

James R. Kirby, II, Segal and Kirby, Sacramento, CA and Michael K. Johnson, Larson and Burnham, Oakland, CA, for defendants.

ORDER *

BURRELL, District Judge.

Defendants Oscar Budd Kleinfeld and Kleinfeld & Heiser (collectively referenced as "Kleinfeld Defendants") move for summary judgment, arguing that the pay-all-taxes clause in Blanche Kroloff's will did not exonerate the remainder beneficiaries to Yale Kroloff's qualified terminable interest prop-

* This case was determined to be suitable for decision without oral argument.  L.R. 230(h).

erty ("QTIP") trust from paying the federal taxes attributable to that trust. Further, defendants Mayall, Hurley, Knutsen, Smith & Green ("Mayall, Hurley") and the Kleinfeld Defendants[1] move for summary judgment, arguing they owed no duty to plaintiff Creighton University ("Creighton"). For the reasons stated below, the motions are denied.

## I.

## BACKGROUND

This is a case of purported legal malpractice. In 1984, Oscar Budd Kleinfeld ("Kleinfeld") drafted a will for Blanche's husband, Yale Kroloff, establishing a QTIP trust. *See* 26 U.S.C. § 2056. The QTIP trust provided that Blanche would receive the income generated by the trust during her lifetime. Upon her death, the trust corpus was left to the residual trust beneficiaries, Yale's brother, Leonard, and Leonard's daughter, Julie. The QTIP trust permitted Blanche to elect to defer paying estate taxes she would otherwise owe on the QTIP trust until her own death. Blanche made this election.

Shortly after Yale's death in 1987, Kleinfeld drafted and Blanche executed her last will and testament leaving her entire estate to two charities, Creighton and Diabetes Research Institute Foundation ("DRIF"). At Blanche's request, Kleinfeld made revisions to her will in 1988 and 1991. The 1991 revision provided pecuniary bequests to four legatees in the amount of $355,000. The residue of Blanche's estate was to be divided equally between Creighton and DRIF. Each of the wills included a "pay-all-taxes" provision, stating:

"*THIRD* : All estate, inheritance and other death taxes, together with interest and penalties thereon required to be paid by reason of my death, shall be paid from the residue of my estate without apportionment and shall not be charged against or collected from any beneficiary under my will, and any codicil hereto, or any trans-

feree or beneficiary of taxable property that passes outside of my probate estate."
*See* Decl. of C. Wolff, Exh. A, Article Third.

In October 1991, Blanche stopped using Kleinfeld as her personal attorney and retained Carter Holly, a partner at Mayall, Hurley. Holly managed various estate planning matters for Blanche from that time forward until her death.

Upon Blanche's death in 1992, her 1991 will and codicil were admitted to probate in the Superior Court of California for the County of San Joaquin. The value of Blanche's testamentary estate at the time of her death, excluding any taxes arguably owed on Yale's QTIP trust, was approximately $2,600,000. A dispute subsequently arose between the residual beneficiaries of Blanche's testamentary estate (Creighton and DRIF), and the QTIP trust beneficiaries (Leonard and Julie). The dispute centered on whether Blache's direction in Article Third to pay all "[e]state, inheritance and other death taxes" exonerated Leonard and Julie from payment of the federal estate taxes attributable to the QTIP trust.

To resolve this dispute, Kleinfeld filed a Petition to Determine Proration of Taxes with the probate court. Leonard and Julie sought summary judgment in that probate action, arguing that Article Third constituted Blanche's direction to her testamentary beneficiaries to pay all federal estate taxes owed on the QTIP trust property. They argued that any proration of the QTIP estate taxes to the QTIP trust or its beneficiaries would violate Blanche's specific instruction in Article Third that taxes "shall not be charged against or collected from ... any transferee or beneficiary of taxable property that passes outside of my estate."

Leonard and Julie supported their motion with a declaration from Kleinfeld, in which he appeared to agree with their construction of Blanche's will. In that declaration, Kleinfeld stated:

I discussed with [Blanche Kroloff] the terms and provisions of each will and ex-

---

**1.** Oscar Budd Kleinfeld, Kleinfeld & Hciser, and Mayall, Hurley, Knutsen, Smith & Green are collectively referred to as "Defendants."

plained all the substantive provisions in each will ... I explained to Blanche that she had the option of declaring whether she wanted her residuary estate to pay all taxes payable upon her death or whether she wanted the taxes to be apportioned, in which event the portion of the estate and inheritance taxes attributable to Trust C as a result of the inclusion of said trust in her taxable estate would be paid from the principal of Trust C prior to passing of the assets thereof into Trust B.

On each occasion, BLANCHE told me that she did not want any apportionment of taxes, did not want to reduce the interests that LEONARD and JULIE would receive from Yale after her death and that she wanted all taxes due on her death, including the taxes due as a result of the inclusion in her taxable estate of Trust C, to be paid from her residuary assets. On each occasion, I explained to BLANCHE that the way she wanted her will drafted would result in the payment of all estate and inheritance taxes due as a result of her death, including the taxes due as a result of the inclusion in her taxable estate of Yale's Trust C, from the assets in her probate estate, that LEONARD and JULIE would pay no estate and inheritance taxes on the money they received from Yale's Trust C, and that only the remainder of her residuary assets after the payment of all of the specific bequests and taxes would go to her residuary legatees. On each occasion, BLANCHE told me that she understood the applicability of the tax provisions and agreed with them.

*See* Creighton Request For Judicial Notice Of Facts In Opposition To Defendant's Motion For Summary Judgment, Exh. E, ¶¶ 10, 11. Creighton countered by arguing that Article Third did not exonerate the remainder trust beneficiaries, Leonard and Julie, from payment of the federal estate taxes attributable to the trust assets.

The parties settled their dispute before the probate court ruled on Leonard and Julie's summary judgment motion. That settlement provided that Creighton and DRIF would receive assets from Blanche's estate in the amount of $1,550,000. Creighton subsequently filed this legal malpractice action against Defendants.

## II.

## DISCUSSION

The parties agree that California substantive law controls the disposition of this motion. When interpreting state law, a federal court is bound to follow the decisions of the highest state court. *Minnesota ex rel. Pearson v. Probate Court,* 309 U.S. 270, 273, 60 S.Ct. 523, 525, 84 L.Ed. 744 (1940). "In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *In re Kirkland,* 915 F.2d 1236, 1239 (9th Cir.1990). However, "in the absence of convincing evidence that the highest court of the state would decide differently, a federal court is obligated to follow the decisions of the state's intermediate courts." *Id.* (citations omitted).

### A.

### WHETHER OSCAR BUDD KLEINFELD WAS NEGLIGENT IN DRAFTING BLANCHE KROLOFF'S WILL

Kleinfeld Defendants now argue that the pay-all-taxes provision did not bar Blanche's estate from recouping taxes paid on Yale's QTIP trust. Creighton responds by arguing that Article Third constitutes a direction to pay the federal estate taxes on the QTIP trust property, which is inconsistent with Blanche's true testamentary intent. According to Creighton, Blanche never intended her will to have this effect. As is explained below, this dispute is factual and cannot be resolved as a question of law.

In California, construction of a will is a question of law, unless the construction turns on the credibility of extrinsic evidence. *Estate of Heim v. C.I.R.,* 914 F.2d 1322, 1325 (9th Cir.1990). "If extrinsic evidence renders the language of the will susceptible to two or more meanings, the will is said to be ambiguous and the construction of the will then turns on the credibility of the extrinsic

evidence." *Id.* Extrinsic evidence is admissible to make this determination. *Id.* If the extrinsic evidence does not render the will susceptible to two or more meanings, then the will is deemed unambiguous, the extrinsic evidence is disregarded, and the plain language of the will is dispositive of the testator's intent. *Id.* On the other hand, if the extrinsic evidence renders the will ambiguous, the extrinsic evidence can be used in determining the testator's intent. *Id.* In that event, interpretation of the will is a question of fact and summary judgment is not appropriate. *De Oliveira v. United States,* 767 F.2d 1344, 1347 (9th Cir.1985); *cf. IBEW, Local 47 v. Southern California Edison Co.,* 880 F.2d 104, 107 (9th Cir.1989); *United States v. King Features Entertainment, Inc.,* 843 F.2d 394, 398 (9th Cir.1988).

■ There is conflicting evidence in the record on whether Blanche intended to have the "pay-all-tax" provision apply to the federal taxes owing on Yale's QTIP trust. On the one hand, the declaration filed by Kleinfeld in the probate action indicates that Blanche did not intend for Leonard and Julie, the remainder trust beneficiaries, to be responsible for any of the federal estate taxes owed on Yale's QTIP trust.[2] Creighton, however, presented evidence to the contrary. *See* Creighton's Memorandum In Opposition To Defendant's Motion For Summary Judgment, p. 11, lines 9–21 and the evidence referenced therein. This conflicting evidence renders the "pay-all-tax" provision reasonably susceptible to two different interpretations. Therefore, interpretation of Blanche's will—and whether it was intended to make Blanche's testamentary estate responsible for paying taxes owing on Yale's QTIP trust—is a question of fact precluding summary judgment.

The authorities cited by the Kleinfeld Defendants are inapposite. In *Matter of the Maurice F. Jones Trust v. Barnett Banks Trust Co., N.A.,* 637 N.E.2d 1301 (Ind.Ct. App.1994), the court held that the "pay-all-taxes" provision did not relieve the residual

beneficiaries of a QTIP trust of their obligation to pay federal estate taxes. In that case, however, the extrinsic evidence unequivocally demonstrated that the testator did not intend to benefit the residual beneficiaries of the QTIP trust at the expense of the testator's child. In this case, there is extrinsic evidence suggesting that Blanche did not intend to benefit Leonard and Julie by making her testamentary estate responsible for paying taxes owing on Yale's QTIP trust.

Kleinfeld Defendants also rely on *In re Gordon,* 134 Misc.2d 247, 510 N.Y.S.2d 815 (N.Y.Surr.Ct.1986), to no avail. Although the court in *In re Gordon* held that the testator did not intend to exonerate beneficiaries of a QTIP trust from contributing their share of estate taxes, there was no extrinsic evidence in that case requiring a different result. In the final case relied on by the Kleinfeld Defendants, *Matter of the Marital Trust Created Under the Will of Cooney,* 188 Wis.2d 468, 525 N.W.2d 53 (1994), the court refused to consider extrinsic evidence of the testator's intent in construing a "pay-all-tax" provision. The *Cooney* decision, however, is inconsistent with the law in California. *See* Cal.Prob.Code § 6111.5 ("extrinsic evidence is admissible to determine ... the meaning of a will or a portion of a will if the meaning is unclear").[3] Therefore, the Kleinfeld Defendants are not entitled to summary judgment based on the manner they now construe the "pay-all-taxes" provision in Blanche's will.

### B.

### DUTY OWED TO CREIGHTON UNIVERSITY

Next, Defendants argue that, regardless of whether Kleinfeld was negligent in drafting Blanche's will, they owed no duty to Creighton. Specifically, they contend that a purported beneficiary cannot bring an action against the drafter of the will unless the testator's obvious intent, *as expressed in the*

---

**2.** Kleinfeld's declaration submitted in the state probate proceeding is contrary to the legal position he now takes in this legal malpractice action.

**3.** It should be noted that the Wisconsin Supreme Court has granted review of the *Cooney* decision. *Firstar Trust Co. v. First Nat. Bank of Kenosha,* 531 N.W.2d 325 (Wis.1995).

*will*, was frustrated. They further contend that because Blanche did not expressly state in her will that Leonard and Julie were to share in the federal estate taxes, or that she intended to maximize her residuary estate, there is no legal basis on which Creighton can maintain this action.[4]

■ The California Supreme Court has consistently held that an attorney who negligently fails to fulfill a client's testamentary directions incurs liability to the intended beneficiary. *Heyer v. Flaig*, 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969); *see also Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961). The Supreme Court stated that although the injured party can recover as a third-party beneficiary, "the third party [can] also recover on a theory of tort liability for a breach of duty owed directly to him." *Heyer*, 70 Cal.2d at 226, 74 Cal.Rptr. 225, 449 P.2d 161.

However, here Defendants appear to contend that the expressed wishes of Blanche, as can be discerned from her will, absolved them from owing any duty to Creighton. They argue that under law the scope of the duty they owed to Creighton is determined by reference to Blanche's intent *as expressed in her will*, and not through extrinsic evidence. This argument presents a question that has not been directly addressed in any reported California decision. Therefore, this Court must predict how the California Supreme Court would decide the issue from the decisions of other jurisdictions, treatises, and restatements. *In re Kirkland*, 915 F.2d at 1239.

■ Although the California Supreme Court has not decided whether a beneficiary in a legal malpractice action can introduce extrinsic evidence of the testator's intent, several intermediate appellate court have tacitly approved of the use of such evidence. For example, in *Bucquet v. Livingston*, 57 Cal.App.3d 914, 129 Cal.Rptr. 514 (1976), a husband and wife hired an attorney to draft a trust to minimize the taxes payable upon their deaths. The attorney executed trust agreements which included a provision whereby they both retained general powers of appointment. The attorney did not realize that by giving the wife a general power of appointment, her estate would be subject to substantial tax liabilities. Following the deaths of the husband and wife, the beneficiaries of the trust filed suit against the attorney. The attorney argued, among other things, that he had no duty to the beneficiaries. The court disagreed even though the testator's express intent, viz., to retain general powers of appointment, was not frustrated. The court concluded that the policy of preventing future harm would be frustrated if the beneficiaries could not sue the attorney for malpractice. *See also Garcia v. Borelli*, 129 Cal.App.3d. 24, 30, 180 Cal.Rptr. 768 (Cal.Ct.App.1982); *Hiemstra v. Huston*, 12 Cal.App.3d 1043, 1046, 91 Cal.Rptr. 269 (Cal. Ct.App.1970); *see generally* Matthew R. Bogart, *Legal Malpractice For the Negligent Drafting Of A Testamentary Instrument: Schreiner v. Scoville*, 73 Iowa L.Rev. 1231, 1247 (1988) (noting that beneficiaries in *Bucquet* would not be permitted to sue in those jurisdictions that do not allow the use of extrinsic evidence to prove the testator's intent).[5]

4. Mayall, Hurley contends that because Blanche intended to minimize Leonard and Julie's share, as opposed to maximizing Creighton's residual share, it owed no duty to Creighton. However, the scope of the duty owed to Creighton is determined by the nature of the attorney-client relationship between Mayall, Hurley and Blanche. *Heyer v. Flaig*, 70 Cal.2d 223, 228–29, 74 Cal. Rptr. 225, 449 P.2d 161 (1969). Here, Mayall, Hurley has not demonstrated that the purported negligent acts and omissions fall outside the scope of the attorney-client relationship between itself and Blanche.

5. In *Ventura County Humane Society v. Holloway*, 40 Cal.App.3d 897, 903, 115 Cal.Rptr. 464 (Cal.Ct.App.1974), the testator retained an attorney to draft his will providing that one-fourth of his estate go to the "Society For The Prevention Of Cruelty To Animals (Local or National)." When the will was probated, numerous humane societies submitted claims to the estate. The San Francisco Society for the Prevention of Cruelty to Animals ("SFSPCA") took the position that it alone was entitled to the one-fourth interest in the estate. The probate court disagreed. The SFSPCA then filed suit against the attorney who drafted the will, arguing that he owed a duty to make an investigation to determine the true intention of the testator and to draft an unambiguous will. The court of appeal disagreed, stating that an attorney may be held liable to the testamentary beneficiaries only if "testamentary in-

Moreover, as the California Supreme Court indicates in *Biakanja v. Irving*, 49 Cal.2d 647, 650, 320 P.2d 16 (1958), the circumstances of each case will determine whether an attorney will be held responsible to a third party not in privity. In making this determination, the court must balance numerous factors, including the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to it, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. *Id.* Defendants' position that extrinsic evidence should never be used in California to ascertain the testator's intent is inconsistent with the fact-specific inquiry mandated by the California Supreme Court.

Defendants cite to several out-of-state cases where the courts in legal malpractice actions held that the testator's intent cannot be determined from extrinsic evidence. For example, in *Kinney v. Shinholser*, 663 So.2d 643, 645–46 (Fla.Dist.Ct.App.1995), the court held that

standing in legal malpractice actions involving the drafting of a will is limited to those who can show that the testator's intent as expressed in the will is frustrated by the negligence of the testator's attorney. [Citation.] Extrinsic evidence is not admissible to determine the testamentary intent because ... to allow such evidence would dramatically increase the risk of misinterpreting the testator's intent, as well as heightening the tendency to manufacture false evidence which could not be

rebutted due to the unavailability of the testator.

Similar results were reached in *Schreiner v. Scoville*, 410 N.W.2d 679, 682–83 (Iowa 1987), and *Kirgan v. Parks*, 60 Md.App. 1, 478 A.2d 713, 717–18 (1984).

The reasoning behind these decisions, however, has been heavily criticized. That criticism is from authority opining that in a legal malpractice action, the evidence at issue is the agreement to draft a testamentary instrument. This authority favors admission of extrinsic evidence to prove the terms of this agreement. *See, e.g., Hale v. Groce*, 304 Or. 281, 744 P.2d 1289, 1290 (1987); *Ogle v. Fuiten*, 102 Ill.2d 356, 80 Ill.Dec. 772, 773, 466 N.E.2d 224, 225 (1984); *Stowe v. Smith*, 184 Conn. 194, 441 A.2d 81 (1981). As one commentator observed:

The rule adopted by the Maryland and Florida courts that privity is required unless the beneficiary is named in the will is based on a misconception of the document at issue. The negligence or breach of contract involves the contract between the attorney and the testator to draft a will containing certain provisions, not the will ultimately drafted. The action does not affect the will as drafted and admitted to probate, nor does it remove property from the estate or force beneficiaries under the will to give up their legacies or pay damages. Determining the testator's intent from extrinsic evidence in the malpractice action is not inconsistent with wills law, because the will is not being interpreted or construed.

Martin D. Begleiter, *Attorney Malpractice In Estate Planning—You've Got To Know*

---

tent expressed in the will is frustrated...." (emphasis deleted). Several courts have adopted the quoted language in ruling that the plaintiff did not state a cause of action where there was no indication from the will that the intent of the testator had been frustrated. *See, e.g., DeMaris v. Asti*, 426 So.2d 1153, 1154 (Fla.Dist.Ct.App. 1983). These decisions read *Ventura* too broadly. The court in *Ventura* only held that a testamentary beneficiary has no cause of action against the testator's attorney for alleged negligence in drafting a valid testamentary instrument that accurately reflects the testator's communicated intent. Although the admissibility of ex-

trinsic evidence of the testator's intent was not at issue in *Ventura*, the court suggested it might be appropriate to consider such evidence when stating that the complaint was "utterly devoid of any indication as to what the true intention of the testator (if different from that expressed in the will) was; *and, oddly enough, appellants likewise fail to address themselves to this vital issue on appeal.*" *Id.* at 906 (emphasis added). This latter statement not only bespeaks the admissibility of extrinsic evidence in certain cases, but discloses that it may be "vital" to establishing the negligence of the drafter of the testamentary instrument.

*When To Hold Up, And When To Fold Up,* 38 U.Kan.L.Rev. 193 (1990).

Further, numerous commentators have criticized the blanket rule excluding extrinsic evidence of the testator's intent as unduly harsh. As one commentator stated, "[i]t is difficult to imagine a harsher or more absurd result when the misstatement of the testator's intent results from the attorney's negligent advice or neglect." Mary Elizabeth Phelan, *Unleashing The Limits On Lawyers' Liability? Mieras v. Debona: Michigan Joins The Mainstream And Abrogates The Privity Requirement In Attorney–Malpractice Cases Involving Negligent Will Drafting,* 72 U.Det.Mercy L.Rev. 327 (1995). This inequity prompted one commentator to opine:

> Beneficiaries should not be barred from recovery, when the misstatement of the testator's intent results from the attorney's negligent advice. The complexity of estate planning forces testators to rely on the services of attorneys. Testators presumably bargain for competent estate planning services. When they receive less than bargained for, the law should permit beneficiaries to recover for damages resulting from the attorney's negligence. [¶] The limitation requiring that intent be "stated in the testamentary instrument" can lead to arbitrary results when there are inadvertent errors in the will.

Matthew R. Bogart, *Legal Malpractice For the Negligent Drafting Of A Testamentary Instrument: Schreiner v. Scoville,* 73 Iowa L.Rev. 1231, 1246 (1988); *see also* Melissa Hutcheson Brown, *Estate Planning Malpractice: A Guide For The Alabama Practitioner,* 45 Ala.L.Rev. 611, 620 (1994) ("This analysis could lead to instances where one attorney is held liable for drafting an ineffective will provision while another is not held liable because he completely omitted an important provision in the will.")

The New Hampshire Supreme Court, recognizing the harshness of barring extrinsic evidence of a testator's intent in a malpractice action, stated:

> [A] beneficiary whose interest violated the rule against perpetuities would have a cause of action against the drafting attorney, but a beneficiary whose interest was omitted by a drafting error would not. Similarly, application of such a rule to the facts of this case would require dismissal even if the allegations—that the defendant botched [the testator's] instructions to leave all his land to his son—were true. We refuse to adopt a rule which would produce such inconsistent results for equally foreseeable harms....

*Simpson v. Calivas,* 139 N.H. 1, 650 A.2d 318, 322 (1994). Numerous other courts have also rejected the argument that extrinsic evidence of the testator's testamentary intent is inadmissible in an action against the attorney who drafted the will. *See, e.g., Ogle,* 80 Ill.Dec. at 773, 466 N.E.2d at 225; *Hamilton v. Needham,* 519 A.2d 172, 175 n. 7 (D.C. 1986); *Stowe,* 441 A.2d at 81.

Based on the foregoing, this Court concludes that the California Supreme Court would, if confronted with this issue, hold that a testamentary beneficiary may rely on extrinsic evidence in demonstrating that the drafter of the testamentary instrument failed to express the true intentions of the testator.[6] Such evidence is relevant to the scope of the duty Defendants owed to Creighton. In light of the extrinsic evidence Creighton submitted that Blanche did not intend for the residuary beneficiaries to be solely responsible for the federal estate taxes on Yale's QTIP trust, and the evidence submitted concerning the scope of the attorney-client relationship between Blanche and Mayall, Hurley, factual issues exist that prevent the grant of Defendants' motions.

## III.

## CONCLUSION

For the aforementioned reasons, Defendants' motions for summary judgment are DENIED.

IT IS SO ORDERED.

---

6. It is unnecessary to decide whether, in a malpractice action against the drafter, a purported beneficiary may introduce extrinsic evidence of the testator's intent where the testamentary instrument is unambiguous.