# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Erika Fabian, Appellant,

v.

Ross M. Lindsay, III and Lindsay and Lindsay, LLC, Respondents.

Appellate Case No. 2012-213726

---

Appeal from Georgetown County
The Honorable Benjamin H. Culbertson, Circuit Court Judge

---

Opinion No. 27460
Heard April 2, 2014 – Filed October 29, 2014

---

## REVERSED AND REMANDED

---

James Matthew Dillon, of Mt. Pleasant; and Thomas A. Pendarvis and Catherine Brown Kerney, both of Pendarvis Law Offices, of Beaufort, for Appellant.

Curtis W. Dowling and Matthew Gregory Gerrald, both of Barnes Alford Stork & Johnson, of Columbia, for Respondents.

David A. Merline, Jr., of Merline & Meacham, PA, of Greenville, for Amicus Curiae, The Greenville Estate Planning Study Group.

---

**JUSTICE BEATTY:** Erika Fabian (Appellant) brought this action for legal malpractice and breach of contract by a third-party beneficiary, alleging attorney Ross M. Lindsay, III and his law firm Lindsay & Lindsay (collectively, Respondents) made a drafting error in preparing a trust instrument for her late uncle and, as a result, she was effectively disinherited. Appellant appeals from a circuit court order dismissing her action under Rule 12(b)(6), SCRCP for failure to state a claim and contends South Carolina should recognize a cause of action, in tort and in contract, by a third-party beneficiary of a will or estate planning document against a lawyer whose drafting error defeats or diminishes the client's intent. We agree, and we reverse and remand for further proceedings.

## I. FACTS

### A. *The Trust Agreement*

The facts, in the light most favorable to Appellant, are as follows. On May 25, 1990, Appellant's uncle, Dr. Denis Fabian, executed a trust agreement that was drafted by Respondents. Dr. Fabian was then around 80 years old and his wife, Marilyn Fabian, whom he had married in 1973, was about twenty years younger. Dr. Fabian made his wife the life beneficiary of the trust.

Mrs. Fabian had two adult daughters from a prior marriage. Dr. Fabian then had one living brother, Eli Fabian, who was in his 70s and not in good health. Dr. Fabian also had two nieces, Miriam Fabian, who was Eli's daughter, and Appellant, who was the daughter of Dr. Fabian's predeceased brother, Zoltan Fabian. Dr. Fabian was aware of Appellant's loss of both her father and her mother at an early age.

Dr. Fabian died on February 5, 2000, and his brother Eli died a few weeks later. Thus, Eli survived Dr. Fabian, but not Mrs. Fabian, who held the life interest in the trust. At Dr. Fabian's death, the trust was valued at approximately $13 million.

Appellant had been told by Dr. Fabian and his wife that she was being provided for in Dr. Fabian's estate plan. She alleges that at the time of Dr. Fabian's death, everyone involved in the matter was under the impression that, when Mrs. Fabian passed, one-half of Dr. Fabian's estate was going to Appellant and Miriam, with the other half to be distributed to Mrs. Fabian's two children.

After Dr. Fabian's death, however, Respondents mailed a letter and two pages from the trust agreement to Appellant and informed her that she would not be receiving anything from Dr. Fabian's trust upon Mrs. Fabian's future death

because the share that would have been distributed to her would, instead, be distributed to Eli's estate. Since Appellant's cousin Miriam was Eli's only heir, Miriam would now stand to be the beneficiary of both her share and Appellant's share. The distribution provision at issue in the trust agreement drafted by Respondents reads as follows:

> *Upon or after the death of the survivor of my said spouse and me*, my Trustee shall divide this Trust as then constituted into two (2) separate shares so as to provide One (1) share for the children of Marilyn K. Fabian and One (1) share for my brother, Eli Fabian. If either of my wife's children predceases (sic) her, the predeceased child's share shall be distributed to his or her issue per stirpes. *If my said brother, Eli Fabian, predeceases me*, then one half of *his share* shall be distributed to his daughter, Miriam Fabian, or her issue per stirpes, and the other half of *his share* shall be distributed to my niece, Erica (sic) Fabian [Appellant], or her issue per stirpes.

(Emphasis added.) Appellant maintains the first sentence makes it abundantly clear that the division and distribution of the trust corpus is to occur only *after* the death of *both* Dr. Fabian and his wife. In addition, Respondents knew that Dr. Fabian wanted Eli's share of the trust to pass to the two named nieces if Eli was not alive at the time of distribution to receive his share. However, the use of the word "me" in the last sentence has effectively defeated her uncle's intentions by inadvertently disinheriting her. She contends this drafting error has resulted in an "unexpected windfall" to one cousin (Miriam), who has now received an unintended double share, and the "devastating" disinheritance of the other cousin (Appellant).

### B. Reformation Action

In response to this situation, Appellant filed an action for reformation of the trust agreement. Two of the three trustees, Mrs. Fabian, who held the life interest, and Walter Pikul, Dr. Fabian's long-time business advisor, agreed with Appellant that the trust document contained a drafting error that thwarted Dr. Fabian's intent, and they concurred in Appellant's request for reformation on the basis the error made the trust ambiguous. In contrast, Appellant's cousin Miriam, who stood to reap the windfall of receiving a double share, strenuously opposed reformation, as did the drafting attorney, respondent Ross M. Lindsay, III, who maintained the trust document was unambiguous and did not need correction.

After years of escalating litigation expenses, Appellant accepted a settlement paid for by the trust. The trust was not reformed, but the parties stipulated that Appellant was not releasing any claim she had against Respondents in their capacity as Dr. Fabian's estate planning attorneys who had drafted the instrument and counseled Dr. Fabian on the creation of the trust.

### C. Action for Professional Negligence & Breach of Contract

Appellant filed the current action against Respondents as the drafters of the trust agreement in which she claims to hold an intended beneficial interest. She asserted a tort claim for professional negligence (attorney malpractice) and a claim for breach of contract on behalf of a third-party beneficiary. Respondents promptly moved to dismiss Appellant's claims under Rule 12(b)(6), SCRCP for failure to state a cause of action.

The circuit court granted the motion to dismiss, finding Appellant could not assert a claim for legal malpractice because South Carolina law recognizes no duty in the absence of an attorney-client relationship. In addition, the court stated no South Carolina court had ever recognized a breach of contract action by an intended beneficiary of estate planning documents, stating: "To the contrary, the Supreme Court has characterized such a cause of action as merely one of a variety of theories which fall under the umbrella of 'legal malpractice,' which requires privity."[1] The court concluded Respondents were "immune from liability" to Appellant under any theory for their alleged error in drafting the trust document. Appellant appealed, and this Court certified the appeal from the Court of Appeals pursuant to Rule 204(b), SCACR. We thereafter granted a motion by the Greenville Estate Planning Study Group to file an amicus curiae brief in support of Respondents.

---

[1] The circuit court relied upon *Rydde v. Morris*, 381 S.C. 643, 645, 675 S.E.2d 431, 432 (2009), in which this Court held "an attorney owes no duty to a prospective beneficiary of a *nonexistent* will." (Emphasis added.) We noted some jurisdictions had relaxed privity requirements to allow a cause of action where an attorney failed to draft a will in conformity with the testator's wishes, but not for cases involving a nonexistent document. *Id.* at 647-48, 675 S.E.2d at 433-34. *Rydde* is not controlling as it involves a distinguishable issue that implicates different legal and policy considerations, as suggested in *Rydde* itself.

## II.  STANDARD OF REVIEW

A defendant may move to dismiss the plaintiff's complaint for "failure to state facts sufficient to constitute a cause of action" pursuant to Rule 12(b)(6), SCRCP.  "A ruling on a motion to dismiss pursuant to Rule 12(b)(6) must be based solely on the factual allegations set forth in the complaint, and the court must consider all well-pled allegations as true." *Disabato v. S.C. Ass'n of Sch. Adm'rs*, 404 S.C. 433, 441, 746 S.E.2d 329, 333 (2013); *see also Turner v. Daniels*, 404 S.C. 430, 431 n.1, 746 S.E.2d 40, 41 n.1 (2013) (noting under the standard of review applicable to Rule 12(b)(6) motions, we construe all of the facts in the appellant's well-pled complaint in the light most favorable to the appellant and presume those facts to be true).  "If the facts alleged and inferences reasonably deducible therefrom, viewed in the light most favorable to the plaintiff, would entitle the plaintiff to relief on any theory, dismissal under Rule 12(b)(6) is improper."  *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 74-75, 753 S.E.2d 846, 850 (2014).

When reviewing the dismissal of an action pursuant to Rule 12(b)(6), SCRCP, the appellate court applies the same standard applied by the trial court. *Doe v. Marion*, 373 S.C. 390, 395, 645 S.E.2d 245, 247 (2007).  This Court is free to decide questions of law, such as whether South Carolina recognizes a certain cause of action, with no particular deference to the trial court.  *Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 327, 534 S.E.2d 672, 675 (2000).

## III.  LAW/ANALYSIS

### A.  *Privity Under Existing Law*

In dismissing Appellant's claims, the circuit court essentially found Appellant was not in privity with Respondents and therefore failed to establish a viable cause of action.  "'Privity' denotes [a] mutual or successive relationship to the same rights of property." *Thompson v. Hudgens*, 161 S.C. 450, 462, 159 S.E. 807, 812 (1931) (citation omitted); *see also Black's Law Dictionary* 1394 (10th ed. 2014) (defining "privity" as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as a transaction, proceeding, or piece of property); mutuality of interests").  South Carolina courts have equated privity with standing.  *See Maners v. Lexington Cnty. Sav. & Loan Ass'n*, 275 S.C. 31, 33-34, 267 S.E.2d 422, 423 (1980) (affirming the

trial judge's determination that "appellant had no standing to allege [her claim] because she was not in privity with respondent").

An early case by the United States Supreme Court adopted the concept of privity from an English decision, *Winterbottom v. Wright*, 152 Eng. Rep. 402 (Exch.) (1842), and applied it to hold an attorney was not liable to a bank that relied on his erroneous certification that his client had good title to land. *See Nat'l Sav. Bank v. Ward*, 100 U.S. 195, 205-07 (1879) (discussing *Winterbottom*'s limitation of recovery in another context to those having privity of contract). The Supreme Court noted there were exceptions, however, for instances of fraud, collusion, and like circumstances. *Id.* at 205-06.

Privity for legal malpractice has traditionally been established by the existence of an attorney-client relationship. *See generally Rydde v. Morris*, 381 S.C. 643, 650, 675 S.E.2d 431, 435 (2009) (stating "existing law [] imposes a privity requirement as a condition to maintaining a legal malpractice claim in South Carolina"). "A plaintiff in a legal malpractice action must establish four elements: (1) the existence of an attorney-client relationship, (2) a breach of duty by the attorney, (3) damage to the client, and (4) proximate causation of the client's damages by the breach." *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 331, 732 S.E.2d 166, 170 (2012).

Appellant contends the current appeal presents an opportunity not available in prior cases for South Carolina to join the vast majority of states allowing intended third-party beneficiaries to bring claims against the lawyer who prepared the defective will or estate planning document. *See Chastain v. Hiltabidle*, 381 S.C. 508, 673 S.E.2d 826 (Ct. App. 2009) (stating whether a duty exists in regard to an alleged wrong is a question of law for the court). Appellant argues a lawyer's negligence in preparing an estate or testamentary document impacts three potential classes of plaintiffs: (1) the client, (2) the decedent's estate, and (3) the intended beneficiaries. As she aptly states:

> [O]f the three possible plaintiffs, only the beneficiaries have the motivation and sufficient damages to bring a malpractice claim. The client is deceased and the estate lacks a cause of action or damages or both. Indeed, because the beneficiaries were supposed to be the beneficial owners of estate assets, only the beneficiaries suffer directly due to the lawyer's negligence. If no cause of action is available to the beneficiaries, the negligent drafting lawyer is effectively immune from liability. Therefore, only the beneficiaries suffer the loss caused by the lawyer's negligence.

In the 1950s, after observing the problems created by the traditional privity requirement, jurisdictions in the United States began abandoning strict privity as an absolute bar to claims for legal malpractice. A majority of jurisdictions now recognize a cause of action by a third-party beneficiary of a will or estate planning document against the lawyer whose drafting error defeats or diminishes the client's intent, although they have done so using a variety of tests and formulations, whether in tort, contract, or both. Max N. Pickelsimer, Comment, *Attorney Malpractice in Will Drafting: Will South Carolina Expand Privity to Impose a Duty to Intended Beneficiaries of a Will?*, 58 S.C. L. Rev. 581, 581-86 (2007) (discussing the origin and evolution of privity in the United States); *see also* Joan Teshima, Annotation, *Attorney's Liability, to One Other Than Immediate Client, for Negligence in Connection with Legal Duties*, 61 A.L.R.4th 615 (1988 & Supp. 2014) (collecting cases considering the legal theories for imposing civil liability upon an attorney for damages to a nonclient directly caused by the attorney's professional negligence).

"The jurisdictions that have eased the strict privity requirement typically use one of the following three approaches to determine whether the intended beneficiary of a will has standing to bring an action for legal malpractice: (1) the balancing of factors test, which originated in California; (2) 'the Florida-Iowa rule[']; and (3) breach of contract based on a third-party beneficiary contract theory." Pickelsimer, *supra*, at 586 (footnotes omitted).

### B. Theories for Imposing Liability in Tort or Contract

### (1) Balancing of Factors Test

In an influential decision emanating from California in 1958, the rule on privity in legal malpractice actions began to evolve throughout the United States. In *Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958), the court held that where the defendant negligently prepared an invalid will, the beneficiary could recover for her loss in tort even though she was not in privity with the defendant. Although the defendant in that case was a notary public and not an attorney, the court also overruled prior cases involving attorneys.

The holding in *Biakanja* was formally extended to attorneys a few years later in *Lucas v. Hamm*, 364 P.2d 685 (Cal. 1961). In *Lucas*, the court allowed recovery both in tort and as a third-party beneficiary to a contract. In discussing whether to impose tort liability, the *Lucas* court reiterated all but one of the factors it originally delineated in *Biakanja* and stated, "[T]he determination whether in a specific case the defendant will be held liable to a third person not in privity is a

matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm." *Id.* at 687 (citing *Biakanja*, 320 P.2d at 19).

Applying these factors, the court reasoned that "one of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property to plaintiffs; the damage to plaintiffs in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that plaintiffs would have received the intended benefits but for the asserted negligence of defendant; and if persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so, and the policy of prevent[ing] future harm would be impaired." *Id.* at 688.

The court then noted since the defendant in this case was an attorney, it "must consider an additional factor not present in *Biakanja*, namely, whether the recognition of liability to beneficiaries of wills negligently drawn by attorneys would impose an undue burden on the profession." *Id.* The court found although in some situations liability could be large and unpredictable, this was also true for any attorney's liability to his client, and the extension of liability to beneficiaries injured by a negligently drawn will does not place an undue burden on the profession, particularly when taking into consideration that the opposite conclusion would cause the innocent beneficiary to bear the entire loss of the attorney's professional negligence. *Id.*

Other jurisdictions have engaged in a similar or modified "balancing of factors" analysis to generally determine whether an attorney should be liable to a third party in the absence of strict privity. *See e.g., Fickett v. Super. Ct.*, 558 P.2d 988, 990 (Ariz. Ct. App. 1976) (citing *Biakanja* and *Lucas* and stating "[w]e are of the opinion that the better view is that the determination of whether, in a specific case, the attorney will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors . . . ."); *Pizel v. Zuspann*, 795 P.2d 42, 51 (Kan. 1990) ("We find the California cases persuasive. We conclude that an attorney may be liable to parties not in privity based upon the balancing test developed by the California courts."); *Donahue v. Shughart, Thomson & Kilroy, P.C.,* 900 S.W.2d 624, 629 (Mo. 1995) (en banc) ("[T]he question of legal duty of attorneys to non-clients will be determined by weighing the factors in the modified balancing test.").

### *(2) The Florida-Iowa Rule*

In the event this Court joins the majority of jurisdictions allowing a third party beneficiary to seek recovery for the improper drafting of a will or estate planning document, Respondents and the amicus urge this Court to adopt an alternative theory of recovery known as the "Florida-Iowa Rule."  It provides:

> An attorney preparing a will has a duty not only to the testator-client, but also to the testator's intended beneficiaries, who may maintain a legal malpractice action against the attorney on theories of either tort (negligence) or contract (third-party beneficiaries).  However, liability to the testamentary beneficiary can arise only if, due to the attorney's professional negligence, the testamentary intent, *as expressed in the will*, is frustrated, and the beneficiary's legacy is lost or diminished as a direct result of that negligence.

*DeMaris v. Asti*, 426 So. 2d 1153, 1154 (Fla. Dist. Ct. App. 1983) (citations omitted); *see also Schreiner v. Scoville*, 410 N.W.2d 679, 683 (Iowa 1987) ("[W]e hold a cause of action ordinarily will arise only when as a direct result of the lawyer's professional negligence the testator's intent as expressed in the testamentary instruments is frustrated in whole or in part and the beneficiary's interest in the estate is either lost, diminished, or unrealized.").  A few other jurisdictions have also adopted this theory.  *See, e.g., Mieras v. DeBona*, 550 N.W.2d 202 (Mich. 1996) (stating the beneficiary named in a will may bring a tort-based action for negligence in drafting the will, but the court will not look to extrinsic evidence).

Respondents' desire, in the absence of this Court's retention of strict privity, is to promote the Florida-Iowa Rule because its essential feature, the imposition of a ban on all extrinsic evidence, obviously makes it more difficult for a plaintiff to establish a claim.  *See* Joan Teshima, Annotation, *What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other Than Immediate Client*, 61 A.L.R.4th 464, 480 (1988) ("Some courts have ruled in this situation that evidence extrinsic to the will cannot be admitted to prove the testator's intent, thus making it impossible, or virtually so, for a thwarted beneficiary to prove his case against an attorney.").

Appellant understandably opposes this theory.  As she correctly asserts: "The fundamental flaw in the Florida-Iowa [R]ule is that it focuses on the testamentary documents prepared by the lawyer rather than the source of the beneficiary's claim, which is not the allegedly defective will or trust document, but

instead is the client-lawyer agreement that was intended to satisfy the client's testamentary intent. The proper approach in cases like this one where latent ambiguities exist in the will, trust agreement, or estate plan would be to allow the admission of extrinsic evidence to establish the client's intent as is generally allowed in a typical will contest."

The Florida-Iowa Rule is actually based on a California case, *Ventura County Humane Society v. Holloway*, 115 Cal. Rptr. 464, 468 (Ct. App. 1974), which held the plaintiff had standing under the balancing of factors test articulated in *Biakanja* and *Lucas*, but in doing so, the court stated "[a]n attorney may be held liable to the testamentary beneficiaries only . . . [i]f due to the attorney's professional negligence the testamentary intent expressed in the will is frustrated and the beneficiaries clearly designated by the testator lose their legacy as a direct result of such negligence." *See* Pickelsimer, *supra*, at 589 (discussing the genesis of the Florida-Iowa Rule).

Appellant's argument for rejecting the Florida-Iowa Rule and its prohibition on extrinsic evidence finds support from the fact that a California district court has specifically observed that other courts applying the Rule have "read *Ventura* too broadly" because extrinsic evidence "was not at issue in *Ventura*," and the case does not stand for the proposition that inquiries should be limited to the testamentary document to the exclusion of all other evidence. *Creighton Univ. v. Kleinfeld*, 919 F. Supp. 1421, 1425 n.5 (E.D. Cal. 1995). To the contrary, extrinsic evidence is often "vital" to proving an attorney's drafting error. *Id.*

For these reasons, we reject the Florida-Iowa Rule and hold extrinsic evidence is not barred, as it is often essential to the pursuit of a claim. *See Jewish Hosp. of St. Louis, Mo. v. Boatmen's Nat'l Bank of Belleville*, 633 N.E.2d 1267, 1273-76 (Ill. App. Ct. 1994) (holding an attorney who drafted a will owed a duty in contract or tort to the remainder beneficiaries of a testamentary trust; under either theory, the non-client beneficiary must demonstrate that they are in the nature of a third-party intended beneficiary of the relationship between the attorney and the client, and evidence of intention is derived from a consideration of all of the circumstances surrounding the parties at the time of the execution of the will).

### (3) Third-Party Beneficiary of Contract Theory

Another theory recognized for recovery is based on a third-party beneficiary approach. South Carolina law already generally recognizes a breach of contract claim for a third-party beneficiary of a contract and we find this principle is appropriate here.

"Generally, one not in privity of contract with another cannot maintain an action against him in breach of contract, and any damage resulting from the breach of a contract between the defendant and a third-party is not, as such, recoverable by the plaintiff." *Windsor Green Owners Ass'n v. Allied Signal, Inc.*, 362 S.C. 12, 17, 605 S.E.2d 750, 752 (Ct. App. 2004) (citation omitted). "However, if a contract is made for the benefit of a third person, that person may enforce the contract if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person." *Id.* (citation omitted).

Courts in other jurisdictions have expressly extended this principle to frustrated third-party beneficiaries of estate instruments, although some have done so as a breach of contract action while others have used the "third-party beneficiary" principle as a basis to allow recovery in negligence. Some jurisdictions have recognized that a plaintiff may choose to proceed in contract, tort, or both. *See, e.g., Lucas*, 364 P.2d at 689 & n.2; *Stowe v. Smith*, 441 A.2d 81, 84 (Conn. 1981); *Blair v. Ing*, 21 P.3d 452, 464 (Haw. 2001).

In *Lucas*, in addition to allowing tort recovery, the California court found "that intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover as third-party beneficiaries." 364 P.2d at 689. The court stated, "Obviously the main purpose of a contract for the drafting of a will is to accomplish the future transfer of the estate of the testator to the beneficiaries named in the will, and therefore it seems improper to hold . . . that the testator intended only 'remotely' to benefit those persons." *Id.* at 688. The court found this main purpose and "intent can be effectuated, in the event of a breach by the attorney, only by giving the beneficiaries a right of action, [so] we should recognize, as a matter of policy, that they are entitled to recover as third-party beneficiaries." *Id.* at 689. Moreover, the court noted the general rule is "where a case sounds in both tort and contract, the plaintiff will ordinarily have freedom of election between the two actions." *Id.* at 689 n.2.

We find this reasoning sound and adopt it here. We also find persuasive *Guy v. Liederbach*, 459 A.2d 744, 746 (Pa. 1983) to the extent that the Pennsylvania court stated it would allow recovery as to *named* beneficiaries:

> [W]hile important policies require privity (an attorney-client or analogous professional relationship, or a specific undertaking) to maintain an action in negligence for professional malpractice, a named legatee of a will may bring suit as an intended third party beneficiary of the contract between the attorney and the testator for

the drafting of a will which specifically names the legatee as a recipient of all or part of the estate.

The court found the grant of standing to a narrow class of third-party beneficiaries was appropriate based on the Restatement (Second) of Contracts § 302 (1979), "where the intent to benefit the plaintiff is clear and the promisee (testator) is unable to enforce the contract," as named legatees would otherwise have no recourse for failed legacies that resulted from attorney malpractice. *Id.* at 747.

Recognizing a cause of action is not a radical departure from the existing law of legal malpractice that requires a lawyer-client relationship, which is equated with privity and standing. Where a client hires an attorney to carry out his intent for estate planning and to provide for his beneficiaries, there *is* an attorney-client relationship that forms the basis for the attorney's duty to carry out the client's intent. This intent in estate planning is directly and inescapably for the benefit of the third-party beneficiaries. Thus, imposing an avenue for recourse in the beneficiary, where the client is deceased, is effectively enforcing the *client's intent*, and the third party is in privity with the attorney. It is the breach of the attorney's duty to the client that is the actionable conduct in these cases. *See* Dennis J. Horan & George W. Spellmire, Jr., *Attorney Malpractice: Prevention and Defense* 2-1 to 2-5 (1989) (discussing directly intended beneficiaries of the attorney-client relationship); *see also Gaar v. N. Myrtle Beach Realty Co.*, 287 S.C. 525, 529, 339 S.E.2d 887, 889 (Ct. App. 1986) ("In his professional capacity the attorney is not liable, except to his client *and those in privity with his client*, for injury allegedly arising out of the performance of his professional activities." (emphasis added)); *Thompson v. Hudgens*, 161 S.C. 450, 463, 159 S.E. 807, 812 (1931) ("Generally speaking, the heir is in privity with his ancestor . . . .").

In these circumstances, retaining strict privity in a legal malpractice action for negligence committed in preparing will or estate documents would serve to improperly immunize this particular subset of attorneys from liability for their professional negligence. Joining the majority of states that have recognized causes of action is the just result. This does not impose an undue burden on estate planning attorneys as it merely puts them in the same position as most other legal professionals by making them responsible for their professional negligence to the same extent as attorneys practicing in other areas.

In sum, today we affirmatively recognize causes of action both in tort and in contract by a third-party beneficiary of an existing will or estate planning document against a lawyer whose drafting error defeats or diminishes the client's intent. The focus of a will or estate document is, inherently, on third-party

beneficiaries. That being the case, the action typically does not arise until the client is deceased. *See Stowe*, 441 A.2d at 83 (stating "merely drafting and executing a will creates no vested right in the legatee until the death of the testatrix"); Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 36:12, at 1288 (2014) ("Since litigation concerning errors in the preparation of a will necessarily arrives after the client's death, the plaintiff usually is an allegedly injured or omitted beneficiary . . . .").

Specifically as to tort actions, the balancing test propounded by the California courts provides a valuable framework in evaluating the considerations that support adoption of a cause of action. *See Donahue*, 900 S.W.2d at 627 ("That balancing test has been cited with approval by most jurisdictions which have considered the issue." (citing Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 7.11, at 383 (3d ed. 1983)). As discussed previously, we reject the Florida-Iowa Rule for its narrow application and ban on extrinsic evidence. As to contract actions for third-party beneficiaries, we find the reasoning in *Lucas* and *Guy* particularly persuasive, and we adopt *Guy*'s limitation on recovery to persons who are named in the estate planning document or otherwise identified in the instrument by their status (e.g., my children and grandchildren, my wife's children).

One court that still retains strict privity, but struggled greatly in doing so, is particularly notable for a vigorous joint dissent in which the justices pointedly remarked:

> With an obscure reference to "the greater good," [] the Court unjustifiably insulates an entire class of negligent lawyers from the consequences of their wrongdoing, and unjustly denies legal recourse to the grandchildren for whose benefit Ms. Barcelo hired a lawyer in the first place. . . .
>
> . . . .
>
> . . . [T]he Court's decision means that, as a practical matter, no one has the right to sue for the lawyer's negligent frustration of the testator's intent. A flaw in a will or other testamentary document is not likely to be discovered until the client's death. And, generally, the estate suffers no harm from a negligently drafted testamentary document.

*Barcelo v. Elliott*, 923 S.W.2d 575, 579-80 (Tex. 1996) (Cornyn & Abbott, JJ., dissenting) (citations and footnotes omitted).  The justices asserted the majority "gives no consideration to the fair adjustment of the loss between the parties, one of the traditional objectives of tort law," and "[t]hese grounds for the imposition of a legal duty in tort law generally, which apply to lawyers in every other context, are no less important in estate planning."  *Id.* at 580.  We agree with these observations and find there are compelling policy reasons supporting recognition of these claims.

## IV.  CONCLUSION

We recognize a cause of action, in both tort and contract, by a third-party beneficiary of an existing will or estate planning document against a lawyer whose drafting error defeats or diminishes the client's intent.  Recovery under either cause of action is limited to persons who are named in the estate planning document or otherwise identified in the instrument by their status.  Where the claim sounds in both tort and contract, the plaintiff may elect a recovery.  We apply this holding in the instant appeal and to cases pending on appeal as of the date of this opinion.  As a result, we reverse the order dismissing Appellant's complaint and remand the matter to the circuit court for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**


**HEARN, J., concurs. KITTREDGE, J., concurring in a separate opinion.  PLEICONES, J., concurring in part and dissenting in part in a separate opinion in which TOAL, C.J., concurs.**

**JUSTICE KITTREDGE**:  I concur in the majority opinion except as may concern the applicable burden of proof, which is not addressed in the majority opinion.  I agree with Justice Pleicones that the burden of proof should be the clear and convincing standard.

**JUSTICE PLEICONES:** I agree with the majority that we should recognize a cause of action for legal malpractice brought on behalf of a person in Appellant's position. As I believe this cause of action should properly sound only in tort, I write separately. Further, I would hold that a decision should only apply prospectively, but that Appellant may pursue her claim to finality under the guidelines announced today.

I agree that public policy considerations dictate a relaxation of the strict privity requirement for purposes of asserting a legal malpractice claim against an attorney who drafts an estate planning document. *See Russo v. Sutton*, 310 S.C. 200, 204, 422 S.E.2d 750, 753 (1992) ("We have not hesitated to act in the past when it has become apparent that the public policy of the State is offended by outdated rules of law."); *see also Auric v. Continental Cas. Co.*, 331 N.W.2d 325, 329 (Wis. 1983) (relaxing the requirement of strict privity in the context of a legal malpractice action based on public policy considerations because the possibility of liability for negligent drafting of an estate planning instrument is one way to make an attorney accountable for his negligence). Likewise, I agree that an attorney owes a duty only to a beneficiary named in an estate planning instrument or identified as such by status in the instrument. *See Lucas v. Hamm*, 364 P.2d 685, 687 (Cal. 1961) (stating the policy reasons, such as the foreseeability of harm to the named-beneficiary, that support the imposition of a duty); s*ee also* Restatement (Third) of the Law Governing Lawyers § 51(3)(a) (2000) (stating a lawyer owes a duty to a non-client when "the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the non-client"). Thus, I agree that Appellant may assert a legal malpractice claim against Respondent based on Respondent's status as a named beneficiary in the trust instrument.

I also write separately as I would require a beneficiary asserting such a legal malpractice claim to prove by clear and convincing evidence that the attorney breached the duty owed to the beneficiary, and the beneficiary suffered damages which were proximately caused by the attorney's breach. *See* S.C. Code Ann. § 62-2-601(B) (Supp. 2013) (noting the burden of proof is clear and convincing evidence in a will reformation action); *see, e.g.*, *Pivnick v. Beck*, 762 A.2d 653, 654 (N.J. 2000) (adopting the clear and convincing burden of proof when a non-client brings a legal malpractice claim on the basis that a lawyer was negligent in drafting an estate planning document).

I respectfully differ from the majority's recognition of a breach of contract action based on a beneficiary's supposed status as a third-party beneficiary. While I acknowledge, as the majority sets forth in great detail, that many jurisdictions recognize a breach of contract action on this basis,[2] I would rely on precedent from this Court and find that a legal malpractice action, which is a form of professional negligence brought by a third-party who lacks privity, sounds only in tort. *See Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 54–55, 463 S.E.2d 85, 88 (1995) (finding a professional negligence action sounds in tort). Moreover, while I agree with the majority that evidence extrinsic to the four corners of the estate planning instrument is admissible to prove whether a lawyer breached his duty in drafting the instrument, I believe characterizing such evidence as "extrinsic" in a legal malpractice context is a misnomer because the evidence sought to be admitted does not "relate to a contract."[3]

Finally, I disagree with allowing "cases pending on appeal as of the date of the opinion" the opportunity to pursue a legal malpractice action in this context. Instead, I would hold that while Appellant may pursue her claim to finality, our decision should only apply prospectively. *See Toth v. Square D Co.*, 298 S.C. 6, 8–10 377 S.E.2d 584, 586–87 (1989) ("Prospective application is required when liability is created where formerly none existed."). I would allow Appellant the benefit of pursuing her claim because our decision today recognizes a duty that has been foreshadowed by this Court. *See Rydde v. Morris*, 381 S.C. 643, 647, 675 S.E.2d 431, 433 (2009) (noting, albeit in dicta, that generally an attorney owes a duty to a non-client intended beneficiary of an executed will where it is shown that the testator's intent has been defeated or diminished by negligence on the part of the attorney, resulting in loss to the beneficiary); *see also* Joan Teshima, Annotation, *Attorney's Liability, to One Other Than Immediate Client, for Negligence in Connection with Legal Duties*, 61 A.L.R.4th 615 (1988 & Supp. 2014) (compiling cases from a majority of jurisdictions recognizing that an estate planning attorney *may* be liable to a beneficiary named or one identified as such by her status in an estate planning instrument).

---

[2] s*ee, e.g., Lucas*, 364 P.2d at 689.
[3] *See* Black's Law Dictionary 637 (9th ed. 2009) (defining extrinsic evidence as evidence "relating to a contract but not appearing on the face of the contract because it comes from other sources, such as statements between the parties or the circumstances surrounding the agreement").

Whether Appellant can prevail on her legal malpractice claim is a question for the fact finder and is one in which we do not answer today. Therefore, I concur with the majority's reversal of the circuit court's Rule 12(b)(6) dismissal because Appellant has stated a viable cause of action in tort based on Respondent's purportedly negligent drafting of the trust instrument.

**TOAL, C.J., concurs.**